AO 243 (Rev. 2/95)

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District OF Rhode ISLAND | |
|---|---|---|
| Name of Movant<br>IKE WEEMS | Prisoner No.<br>04956070 | Case No.<br>CA. NO. 00-142T |
| Place of Confinement<br>BIG SANDY, PO BOX 2068 INEZ, KY 41224 | | |

UNITED STATES OF AMERICA V. IKE WEEMS
(name under which convicted)

CA 04 421 T

**MOTION**

1. Name and location of court which entered the judgment of conviction under attack
   UNITED STATES DISTRICT COURT OF RHODE ISLAND

2. Date of judgment of conviction 3-8-02

3. Length of sentence 282 MONTHS

4. Nature of offense involved (all counts)
   possession of an unlic. firearm
   [redacted]

5. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☑
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☑

8. Did you appeal from the judgment of conviction?
   Yes ☑ No ☐

AO 243 (Rev. 2/95)

9. If you did appeal, answer the following:

(a) Name of court RHODE ISLAND COURT OF APPEALS, UNITED STATES COURT OF APPEALS

(b) Result WRIT OF CERT DENIED

(c) Date of result 10/6/03

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
Yes ☐ No ☑

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court

(2) Nature of proceeding

(3) Grounds raised

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result

(6) Date of result

(b) As to any second petition, application or motion give the same information:

(1) Name of court

(2) Name of proceeding

(3) Grounds raised

AO 243 (Rev. 2/95)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

(5) Result

(6) Date of result

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc. Yes ☐ No ☐
(2) Second petition, etc. Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: SEE ATTACHED GROUND: 1

Supporting FACTS (state *briefly* without citing cases or law):

B. Ground two: SEE ATTACHED GROUND 2

Supporting FACTS (state *briefly* without citing cases or law):

C. Ground three: SEE ATTACHED GROUND 3

Supporting FACTS (state *briefly* without citing cases or law):

AO 243 (Rev. 2/95)

D. Ground four: SEE ATTACHED GROUND 4

Supporting FACTS (state *briefly* without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them:
Grounds two, three, four, and five were not previously presented due to petitioners faith in his lawyers duty to protect his constitutional rights guaranteed petitioner by law.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☒ No ☐

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing
Jeffrey F. Richardson, 571 Pontiac Avenue, Cranston Rhode Island

(b) At arraignment and plea
Same as above

(c) At trial
Same as above

(d) At sentencing
Robert B. Mann, One Turks Head Building, Suite 501 Prov, R.I.

AO 243 (Rev. 2/95)

(e) On appeal

Robert B. Mann

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☒

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

(N/A) Pro Se
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

9-23-04
Date

L. Weems
Signature of Movant

A. Ground One: Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

Ten to fifteen minutes after petitioner was arrested and drove away from house, officers told Sandra Hurt she could not enter house because they were searching for a gun. An hour or so later while exiting the house, police officers told Sandra Hurt they found the gun, and they should be happy because Smith had a baby in house and she wouldn't want that around. While leaving officers also told Katisha Smith "We found what we were looking for. "When Hurt and Smith entered house they observed that; dresser draws were searched, clothes were thrown around, bedding and pillows were removed from bed in Sandra Hurt's grand-daughter room and thrown into crib, stove and refrigerator was pulled away from kitchen wall, garbage was dumped on kitchen floor from garbage bag, heater vents from the floor were removed from each room, inside of couch seats were sliced, couch cushions were sliced and thrown on the floor. Photographs reflecting these conditions of house, and testimony, were introduced as evidence during suppression hearing. At the end of Suppression hearing, court denied motion to suppress firearm and stated the above conditions of house could be explained by agents and officers running back and forth in the house while petitioner was in attic area. The court further stated the couch cushions being cut was unexplainable. The courts ruling was incorrect in regards to the evidence, no where in the agents testimony at suppression hearing does it explain how the above conditions of house could have been caused by agents and officers running from room to room.

Cont. Ground one:

Court did not permit petitioner to argue evidence at close of suppression hearing or point out any incorrectness in courts hastely ruling. Hence, petitioner was denied an opportunity to fully and fairly litigate claim of illegal search . Court of appeals also failed to rule on the merits of this claim. There was no evidence produced at hearing that either agent who testified found gun in plain view.

**B.** Ground two: Conviction obtained by denial of effective assist--ance of counsel at first trial.
(failure to argue dead bang winner)

The trial counsel for the petitioner rendered ineffective assistance in several respects, his failure to argue a "dead bang winner" at the close of the government case during motion for judgment of aquittal, to offer evidence that was known to him that would have refutted, and casted doubt on the unfactual allegations regarding trial evidence made by government during rule 29 motion for judgment of aquittal, (See attached Exh. "A", facts supporting ground two-dead bang winner) this failure to argue or brief any case law on constructive possession and insufficiency of evidence, including, but not limited to, first circuit cases which was provided to him by petitioner prior to first trial. Also, during client-attorney conference, counsel told petitioner he was scared to argue petitioners issues against court because if he challenged judge on a legal issue that it may hurt him financially when he comes before the judge in a civil action. That the judge may hold a grudge against counsel

and make adverse rulings towards him in civil case if he fought hard for petitioner.

C. Ground three: Conviction obtained by denial of effective assistance of counsel. (Counsel consented to hung jury over petitioners objections at first trial and during private chamber conference made misstatements of laws and facts)

During private chamber conference counsel stated in agree--ment with court, "I would tend to agree. I think it is, from the few questions we have received, it doesn't seem that they are hung up on the elements. They should have come to agreement by now one way or the other. Trial counsel in private chamber conference consented to declaration of mistrial (hung jury) where jury had only deliberated for approximately 4 hours after about 9 hours of testimony. During deliberations the first ques--tion from jury was, "Please clarify in our affecting commerce." Which, contrary to statement made by counsel, does seem to ques--tion element of offense, and surely no where in any law in the United States of America does it state four(4) hours is the time where the jury must or should return a verdict while deliberating. This decision in private conference was made agai--nst the will of petitioner and with out petitioners consent (See Exb.-B "Affidavit") Afterwards, in open court, counsel allowed the jury to be excused over petitioners objections. Petitioner informed counsel that petitioner no longer wanted him to represent petitioner. Petitioner tried to raise these issues on interlocatory appeal but was denied substitute counsel. (See Exh. "C" documents regarding interlocatory appeal) Petit--ioner was never asked by court did petitioner consent to hung

jury. Neither did court inquire into client-attorney conflict after declaring mistrial.

**D.** Ground four: Conviction was obtained by denial of effective assistance of counsel at second trial.

The trial counsel for the petitioner ineffective assis--tance in several respects; (A) Trial counsel was "sleeping" or "nodding off", prior to fainting, during government direct examination of government key witness informant Christopher Macon. (B) Counsel fainted while conducting cross examination of Christopher Macon, while counsel was unconscious on courtroom floor Marshals came from behind petitioner and restrained petit--ioner by grabbing petitioners shoulders telling petitioner "don't move". Marshals then escorted petitioner back to holding cell area through door behind defense table, all this was done in the presence of the jury. Petitioner made counsel aware of this when counsel regained consciousness and told him to tell the judge, counsel never informed court of these events. (C) Counsel failed to impeach Macon's credibility when he resumed cross-examination of Macon after he fainted. Counsel never retu--rned to the line of questioning prior to his collapse. Petitioner and counsel had agreed that he would impeach Macon's credibility with Macon's prior gun conviction (which counsel filed notice of to government) and with governments notice of Macon's expected testimony which was different than Macon's trial testimony. Counsel failed to question Macon on any of these issues. Counsel told petitioner he was on medication since his collapse in court--room. (D) There was no competency hearing held by court to

see if counsel was competent to continue trial after fainting in front of jury. Fainting does have a correlation to faulty memory or delusions. Counsel showed several signs of confusion in court after he fainted. (E) Counsel told petitioner that informant Christopher Macon would not be able to testify under law of case doctrine, and with out Macon's testimony the govern--ment couldn't find petitioner guilty. This is the only reason petitioner went to second trial. (See hearing before magistrate Lovegreene prior to second trial, picking of jury) (F) Counsel failed to report to court that juror was sleeping after peti--tioner made him aware of this after he regained consciousness. (G) Counsel failed to request franks hearing based on petitoner's affidavit, letters and motions to court, and governments notice which raised factual disputes between Christopher Macon's state--ments and Agent Troianos recitations in written reports and hearings of what Macon allegedly told him. (H) Counsel failed to object to jury instructions on constructive possession, and jury instructions regarding evidence presented on the search. The <u>only</u> evidence the government presented at second trial was petitioner actually possessed firearm. Testimony of Agent O'Shau--ghnessy refutted any evidence of constructive possession. Petit--ioner told counsel to object to this charge, counsel refused. (I) Counsel failed to call important facts witness which would have shown petitioners actual innocence, and counsel failed to cross-examine trial witness on important facts, after counsel fainted, which were exculpatory and would have shown petitioners actual innocence. (Petitioner's limited investigative abilities have prevented petitioner from contacting these witnesses in ground four(I), out of an abundance of caution petitioner incl-

-uded these grounds so petitioner wouldn't be barred from presenting these witness statements or affidavits at a later date.

E. Ground five: Conviction obtain by use of prior conviction of assualt where petitioner was denied effective assistance of counsel.

Petitioner was convicted on June 6, 1998 of assault with a dangerous weapon on a correctional officer which stemmed from an incident in July 6, 1992. Petitioner, while at Altona Correct--ional Facility in New York, filed an I.A.D. (Interstate-agree--ment on detainers) In Nov. of 1997 to be brought to trial on these charges in Rhode Island. Petitioner received a letter from Attorney Generals Office of Rhode Island December of 1997 informing petitioner that there was no open case on this assault charge (Case #P2/94-0612d) Against petitioner and denied petit--ioner I.A.D. In Jan. of 1998 petitioner was called by administr-ative staff Altona Correctional facility, where employee informed petitioner that attorney general office of Rhode Island had forwarded another letter informing them that petitioner indeed did have an open case for assault (P2/94-0612d) that the A.G.'s office had made a mistake by dismissing petitioner I.A.D. And for petitioner to re-file another I.A.D. Petitioner refiled I.A.D. In Jan 1998 and was eventually brought to Rhode Island Intake Center at the A.C.I. Petitioner informed counsel Richard Corley on June 6, 1998 (Corley was petitioner's state attorney in this case) of first I.A.D. and showed him Attorney Generals letter stating petitioner had no open case in response to first I.A.D. Petitioner informed Mr. Corley to request dismissal for

violation of 180 Speedy Trial violation under federal statue of inter-state-agreement on detainers because it was beyond 180 days since petitioner filed first I.A.D. I also told Mr. Corley that these events of the case happened six years ago and to ask for dismissal for violation of Speedy Trial or due process. Counsel told petitioner that he could get assault charge dropped, but if I didn't plead guilty the state prosecutor would violate my probation and I would get much more time than the six months to serve for assault. Petitioner made counsel aware of this prior to sentencing in federal case and asked him to get this prior vacated.

F. Ground six: Conviction obtained by use of prior convictions in violation of due process and petitioner's right to a fair trial.

Petitioner's sentence was enhanced by use of prior convictions which were not proven before jury.

# CERTIFICATE OF SERVICE

I hereby certify THAT I HAVE SERVED A copy of THE enclosed motion, under 28 USC 2255 TO VACATE, SET ASIDE, or correct Sentence, upon Dulce DONOVAN, ASSISTANT U.S. Attorney, Fleet Center, 50 Kennedy PLAZA, 8th Floor, Providence, Rhode ISLAND, 02903, by PLACING IN Prison MAILBOX on September 24th 2004.

L. Weems

EXB. "A"

## FACTS SUPPORTING GROUND TWO

After the close of the government's case, and prior to the defense calling any witness, defense counsel moved for judg--ment of acquittal under rule 29.. The government argued that evidence presented showed that there was, no firearm present in the room or vicinity until petitioner fell through ceiling, that the evidence was indeed circumstantial, and that it was sufficient for the jury to find that petitioner had brought gun down with him through the ceiling. The court agreed and denied petitioner's motion for judgment of acquittal.

Contrary to the Government argument, the government did not produce any evidence that the gun was not in the room or vicinity before petitioner fell from ceiling. The following facts were known to counsel at close of governments case which he failed to argue.

FACTS SUPPORTING GROUND TWO

1) Government only produced evidence that petitioner was arrested in same room where gun was found.

2) Government didn't produce any evidence that firearm was on my person.

3) Government didn't produce any evidence that anyone ever saw me with firearm.

4) Government didn't produce any evidence to show petitioner was ever at house on any other day than Dec. 11 2000. (The day of arrest)

5) Government didn't produce any evidence that petitioner had ever lived or stayed at house before Dec. 11th 2000.

6) Government didn't produce any evidence that petitioner had any clothes in the house.

7) Government didn't produce any evidence petitioner had any documents in the house, identification, birth certificate, phone bills, etc....

8) Government didn't produce any evidence petitioner was ever in bedroom where gun was found prior to fall from ceiling.

9) Government didn't produce any fingerprints of petitioners on firearm.

10) Government didn't produce any statements made by petitioner in regards to firearm.

11) Government didn't produce any testimony from Katisha Smith who lived at house and slept in bed/where firearm was found on boxspring.

12) Government didn't produce any evidence to show that firearm wasn't between mattress prior to petitioner falling from ceiling

onto bed.

13) Government didn't produce any evidence that petitioner actually possessed firearm.

These were facts of record at the close of governments case at the first trial. Counsel only made a weak bare bones oral argument. Clearly the evidence was insufficient to prove constructive possession, counsel failed to argue "dead bang winner" or the laws of the case.

EX "A"

TROIANO'S TESTIMONY, FIRST TRIAL

Day One, p. 85: no one moved the bed prior to Weems falling onto the bed from the ceiling.

Day One, p. 86: The bed is still in place prior to Weems's fall.

Day One, p. 104: Never saw or felt pistol on me when I fell from ceiling, neither did he see pistol fall from ceiling.

Day One, p. 42-43: Matress became ajar during struggle.

Day One, p. 105: Matress moved during struggle.

Day One, p. 104: The first time he saw gun was on boxspring after I was arrested.

Day One, p. 106-107: No facts indicate gun wasn't on boxspring before I fell from ceiling.

O'SHAUGHNESSEY'S TESTIMONY

DAY ONE, P. 144: GRABBED MY WAIST AND LEG WHEN PULLING ME FROM CEILING. (DIDN'T FEEL GUN.)

Day One, p. 147: Grabbed me by the waist.

Day One, p. 148: Never saw gun on me or fall from ceiling.

Day One, p. 145: States after I was handcuffed and removed from bed, a frisk was conducted, no weapon was found on me. Then agents went back into the bedroom and found firearm on bed.

Day One, p. 149: Stated right after I was arrested the firearm was noticed on bed, someone else brought his attention to it.

**EXB. B**

**AFFIDAVIT**

I, Ike Weems, declare under penalty of perjury that the statements I make in this affidavit are true and collect.

July 19th 2001 during deliberations of my first trial I was called to client-attorney's conference room to speak to attorney Richardson. He informed me that the jury had asked the court three questions. We spoke about which way the jury may be leaning by the nature of the questions, we agreed that the questions appear to be in my favor. Mr. Richardson also told me I'd never again get evidence this favorable in front of a jury. Mr. Richardson told me he had to go, I told him that this my life and not to agree to a mistrial with out consulting me first. Soon, after I was called into the courtroom where Mr. Richardson informed me there was a hung jury. This was the first time I've entered the courtroom that entire day so I was shocked and confused on how this was done with out me being present. I asked Mr. Richardson "what do you mean a hung jury?" "I never agreed to this." I viciferously objected to this mis--trial to Mr. Richardson, I told him to ask the court to ask the jury could they continue to try and reach a verdict because I didn't want to go to another trial where the evidence would be less favorable. We started to argue and Mr. Richardson told me to be quiet. Everything will be o.k., he'd explain to me later. After the court excused the jury and scheduled a retrial, I told Mr. Richardson again to tell the judge I didn't agree to hung jury and ask them to return, Mr. Richardson told me

it was too late, I told him I no longer wanted him as my attorney . Later counsel told me he was in parking lot when court received deadlock note from jury. He said when he got to courts chambers he was admonished by judge. He said he felt pressured so he consented to hung jury.

**Date:** 9-23-04

**Signed** L. Weems

"EXH. C"

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>IKE WEEMS | ) | No. 01-2080 |

APPELLANT'S WITHDRAWAL OF APPEAL
AND STATEMENT OF APPELLANT REQUESTING SUBSTITUTE COUNSEL

The APPELLANT, IKE WEEMS, in the above-captioned matter, voluntarily withdrawals his appeal on the issue of whether the trial court committed error in denying the Defendant's motion for acquittal. Undersigned counsel states that the underlying grounds for the motion raises a good faith basis for the motion but it is not yet ripe for appeal to the 1st Circuit. The Appellant reserves his rights to file an appeal on those grounds when and if the motion becomes ripe for appeal to the 1st Circuit.

I. Comment upon Issues on the Conduct of the Trial.

The Appellant has expressed a desire to counsel to broaden his appeal to cover other aspects of the trial which were not addressed within the original notice to appeal. The issues raised impacts upon the performance of the undersigned counsel and should be the subject of substitute appeallate counsel's review, research and comment. The undersigned counsel did not move to withdraw from the case because of the tight time lines involved in the appeal process. The Appellant's issues concerning the conduct of the trial touch upon the Double Jeopardy Clause but are not fully briefed by

 "EXH C"

the undersigned because it will force the undersigned to comment upon the validity of certain actions or non-actions taken by counsel during the course of the trial.

The Appellant attaches his signed hand written two page statement requesting substitute counsel outlining the reasons for his request. Appellant requests appointment of a appellate attorney to review the claim for Double Jeopardy based on the Trial Court's abuse of discretion on declaring a hung jury.

Appellant,
By and through his attorney,

[signature]

Jeffrey F. Richardson, Esq.#3142
571 Pontiac Avenue
Cranston, RI 02910
(401) 467-4090

CERTIFICATE OF SERVICE

I hereby certify that a photocopy of this document was mailed to Donald c. Lockhard, Ast. US Attorney General, US Dept. of Justice, Fleet Center, 50 Kennedy Plaza, 8th floor, Providence, RI 02903 by 1st class mail, postage prepaid on August 15, 2001.

Andrea Richardson

"EXH C"

1. Jeopardy Is Attached After Jury Is Sworn In.
"A defendants valued right to have his trial completed A particular tribunal is with the protection of his fi amendment guarentee Against double Jeopardy". Crist Bretz [redacted] 437 U.S. 28

2. Trial court Abused discretion when declaring A Mistr
We have right to appeal Abuse of Discretion by Judge which lead to decision of manifest neccesity or Declaring of mistrial (Hung Jury) If such Abuse of discretion is proved It bars A retrial, A second triA violates the fifth Amendment guarentee Against Double Jeopardy. Supporting cases - U.S V. Lansdown, 460 f2d 16 170 (4th cir 1972); U.S. V. Carnes, 618 f2d. 68 (9th cir. 1980) U.S.V. Barbioni, 62 f3d. 5 (1st cir. 1995); Abney V. U.S., 43 U.S. 651 (1977); U.S. V. Ajimura, 598 f2d. 510 (9th cir. 1979); Cohen V. Benificial Industrial Loan Corp., 337 U.S. 541 (1949);

"The exception to the final Judgement rule was Set fourth In cohen" Defendant can appeal th Double Jeopardy claim under collateral order"

Date: 8-15-01

Respectfully Submitted

I. Weems

IKE WEEMS

 "EXH C"

Although Defendant has right to Appeal from A collat order reviewable under exception to the finality rul Defendant does Not have Adequate means to properly formulate brief for Appeal.

1. Defendant has not been Appointed Appellate counsel, even though defendant has requested Appoint ment of Appellate counsel.
2. Defendant has not yet been given copy of reque Trial Transcript, therefore defendant can not ma "colorable" Argument of Double Jeopardy claim ba on facts In regards to Trials court Abuse of discretion prior to Alleged manifest neccesity ar Declaring of Hung Jury.

NOTE: Defendants Trial Attorney has not been Admitt to first Circuit Bar, Neither can defendants counse provide active and vigorous Appellate representation, Defendant has right to effective Assistance of cou on Appeal, Anders V. California, 386 U.S. 738; Robbin V. Smith, 152 F.3d. 1062 (9th cir. 1997).
Appellate Attorney should be appointed by court pursuant to Criminal Justice act and ~~[illegible]~~ appellants request for substitute counsel. (See Selection of counsel form dated 8-7-01, See Motion for expedited Appointment of Counsel dated 8-10-01, See Appearan form and letter from acting clerk, Janice O'neil, dated 8-2-01.

Respectfully Submitted

 "EXH C"

OFFICE OF THE CLERK
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
(617) 748-9057

FORM FOR SELECTION OF COUNSEL ON APPEAL

No. 01-2080 US v. Weems

On appeal I wish to be represented in the following manner:

____ I wish to represent myself and proceed as pro se.

____ I request that Jeffrey Richardson Esq., who represented me in the District Court be appointed to represent me.

I.W. I request that the Court appoint new counsel to represent me.

____ I will retain private counsel to represent me.

Date: 8-7-01

IKE WEEMS
Print Name

I. Weems
Signature

Return to:

Clerk's Office
United States Court of Appeals for the First Circuit
1 Courthouse Way, Boston 02210

 "EXH C"

**To be filed by: 8/16/01**

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

**APPEARANCE FORM**

Case No. 1-2080 US v. Weems

**FAILURE TO FILL OUT COMPLETELY MAY RESULT IN THE REJECTION OF THIS FORM AND COULD AFFECT THE PROGRESS OF THE APPEAL**

THE CLERK WILL ENTER MY APPEARANCE AS COUNSEL ON BEHALF OF:

______________________________ as the
(Specify name of person or entity represented)

[ ] appellant(s) [ ] appellee(s) [ ] amicus curiae

[ ] petitioner(s) [ ] respondent(s) [ ] intervenor(s)

[X] I do not represent a party to the appeal.

Jeffrey F. Richardson
(signature)

(SIGN ONLY IF PARTICIPATING)

Corrections:

Status:

Jeffrey F. Richardson, Esq.

[redacted].

571 Pontiac Ave.

Cranston, RI 02910

Telephone: ____________ **Court Of Appeals Bar Number:** ____________

Fax: ____________ E-Mail: ____________

Has this case or any related case previously been on appeal?

Yes ____ Court of Appeals No. ____________

No ____

[X] IF YOU WILL NOT BE PARTICIPATING IN THIS CASE, PLEASE CHECK HERE AND RETURN, AND GIVE US THE NAME AND ADDRESS OF ANOTHER ATTORNEY, IF ANY, WHO WILL PROVIDE APPELLATE REPRESENTATION.

To be appointed by Court pursuant to Criminal Justice Act and Appellant's request for substitute counsel.

NOTE: Must be signed by an Attorney admitted to practice before the United States Court of Appeals for the First Circuit pursuant to Local Rule 46(a)(2). If you are applying for admission, please return this appearance form with your application for admission.

If your name has changed since you were admitted to the First Circuit Bar PLEASE show the name under which you were admitted.

COUNSEL MUST COMPLETE & RETURN THIS APPEARANCE FORM
IN ORDER TO FILE PLEADINGS IN THIS COURT