**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **IKE WEEMS,** | : | |
| | : | |
| **Petitioner** | : | **C.A. No. 04-421T** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Respondent** | : | |

**UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Now comes the United States of America, by and through its attorneys, and objects to Defendant's Motion to Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 for the reasons set forth in the accompanying memorandum.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

DULCE DONOVAN
Assistant U.S. Attorney
50 Kennedy Plaza
8th Floor
Providence, RI 02903
(401) 709-5000

Dated: January 6, 2005

SCANNED

13

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| IKE WEEMS, | : | |
| | : | |
| Petitioner | : | C.A. No. 04-421T |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. PROCEDURAL HISTORY

On December 20, 2000, a grand jury returned an indictment charging that from an unknown time through December 11, 2000, Petitioner Ike Weems (aka "True"), a previously-convicted felon, possessed a .45 caliber/410 gauge revolver (a revolver that fired shotgun shells), in violation of 18 U.S.C. § 922(g)(1). In July 2001, a jury deliberated for two days but could not reach a verdict. By agreement of the parties, the Court declared a mistrial.

Seeking to avoid retrial, Weems appealed. The First Circuit held: "Since the record in this case makes clear that defendant consented to the declaration of a mistrial, this appeal is without merit and the motion to dismiss is granted." (8/23/01 Order in Case No. 01-2080.)

On October 19, 2001, a second jury convicted Weems. On March 8, 2002, the Court sentenced him to 282 months of

imprisonment.

Weems timely appealed to the First Circuit and his conviction and sentence were affirmed. United States v. Weems, 322 F.3d 18 (1st Cir. 2003). Weems petitioned the Supreme Court of the United States for a writ of certiorari which the Court denied on October 14, 2003. Weems timely filed the instant § 2255 motion on October 1, 2004.

## II. THE LAW GOVERNING WEEMS' ENTITLEMENT TO A HEARING

Section 2255 provides that the Court should hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Rule 4 of the rules governing § 2255 proceedings for the United States District Courts provides in pertinent part that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 4 of Fed. R. of § 2255 Cases.

The burden is on the movant to prove by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989). In considering a motion under § 2255, the district court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than

facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).

The First Circuit has stated that no hearing is required where the § 2255 motion: "1) is inadequate on its face, or 2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). Moreover, the First Circuit has held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); see also Panzardi-Alvarez v. United States, 879 F.2d 985 n.8 (1st Cir. 1989). A district judge's personal observation and recollection of the events at trial may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n. 4 (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 954-955 (1st Cir. 1978).

In the instant case, no evidentiary hearing is required because all of Weems' claims can be resolved by reference to the record and likely the Court's own recollection of the trials. Portions of the record necessary to decide this motion include excerpts from the trial transcripts which are submitted in conjunction with this memorandum.

## III. FACTS

### A. Evidence at the First Trial

At the first trial, the testimony of three officers established the following. On December 11, 2000, Special Agent Edward Troiano of the Bureau of Alcohol Tobacco and Firearms (ATF) and other officers went to 11 Padelford to arrest Weems on an outstanding warrant. (7/17/01:33-34.) When they arrived, they knocked on the door repeatedly and shouted for Weems to come out. (7/17/01:33-35.) As this was happening, Katisha Smith returned to the house and claimed that only she lived there and that she did not know Weems. (7/17/01:34-35,80-81.) Around the same time, however, an officer positioned behind the house saw Weems poke his head and a portion of his body out of a window and then retreat inside the house. (7/17/01:34-35,80-81.) Officers opened the door of the house using Smith's key and yelled that they had a warrant for his arrest. (7/17/01:35-36; 7/18/01:5-6.) Still, he would not surrender. (7/17/01:36.)

Officers then looked for Weems in the house, conducting a security sweep as they did so. (7/17/01:36-39,82-85.) During the sweep, Agent Troiano and another officer looked in the area around the bed on which Weems later landed when he was pulled through the ceiling. (7/17/01:40-41,85-86.) They also checked to make sure no one was hiding under the bed. (7/17/01:85.) At the time, they saw no gun on the bed. (7/17/01:40-41.)

After officers determined that Weems was in the attic, they yelled up for him to surrender. (7/17/01:38-39.) Weems then tried to smash his way through the ceiling and an attic wall. (7/17/01:39-40.) Both escape attempts failed and Weems remained in the attic. (7/17/01:39-40.) Due to safety concerns, the officers sprayed pepper spray into the attic. (7/17/01:40.) A few minutes later, Weems broke through the bedroom ceiling. (7/17/01:40.)

When Weems's legs appeared, officers pulled him down onto the bed. (7/17/01:40-41,90-92.) Weems struggled with the officers on the bed, keeping his hands underneath his body and refusing to put them behind his back. (7/17/01:41,93-94.) Just after Weems was subdued, an officer noticed a gun on the bed. (7/17/01:42,104, 107,133.) Agent Troiano and Officer Matthew O'Shaughnessy then looked at the bed and saw the shotgun revolver lying on a section of the box spring that was exposed due to the misaligned mattress, directly under the area where they had just struggled with Weems. (7/17/01:42-45,71,92-93,96,102-06,138,149-50.) Detective Kerion O'Mara also saw the gun. (7/18/01:15.) Once an evidence kit arrived, Agent Troiano took photos of the gun before moving it. (7/17/01:45-47.) The officers did not find anyone in the house aside from Weems. (7/17/01:36-37,40-41,47.)

Agent Troiano later examined the gun and saw that it was

loaded with shotgun shells. (7/17/01:48-50,69-71.) He also determined that the gun worked and that it was made in Tennessee. (7/17/01:51-52,126-28.)

At trial, Weems called Sandra Hurt, a neighbor and relation of Smith's. Counsel attempted to elicit from Hurt facts supporting the theory that contrary to the officers' testimony, the gun was found as part of a general search which occurred long after Weems was arrested. (7/18/01:18-39.) On cross-examination, Hurt confirmed that she had seen Weems at 11 Padelford on prior occasions but claimed not to know what he was doing in the apartment. (7/18/01:40-42.) She also testified that Smith did not keep any guns in the house as far as she knew. (7/18/01:42-43.)

In sum, the evidence at the first trial established seven main points. First, Smith and Weems were apparently the only two adults who had a connection to 11 Padelford, where the shotgun revolver was found. Second, only Weems was inside the address when the officers entered to arrest him. Third, although the apartment was apparently Smith's, Hurt testified that Smith did not keep any guns in the house as far as she knew. Fourth, despite numerous attempts by the officers to get Weems to surrender, he refused to do so and indeed made several desperate escape attempts, all of which indicated consciousness of his own guilt. Fifth, before Weems was discovered to be in the attic,

officers conducting a security sweep of the bedroom checked the area around the bed and did not see a gun on the bed. Sixth, when Weems was pulled through the ceiling and onto the bed, he tried to keep his hands underneath his body and refused to put them behind his back, consistent with someone who was trying to hide something. And seventh, the officers discovered the shotgun revolver on the exposed box spring, directly under the area where they had just struggled with Weems.

**B. Evidence at the Second Trial**

At the second trial, the Government established the same basic sequence of events, from the arrival of the officers at 11 Padelford through Weems' escape attempts, his ultimate capture after being pulled through the ceiling and onto the bed, and the discovery of the shotgun revolver on the box spring underneath him. (10/15/01:42-68; 10/18/01:19-29.) As before, Weems stipulated to his prior felony conviction. (10/18/01:75-77.) Also as before, the Government introduced evidence showing that the gun had traveled in interstate commerce. (10/15/01:68-73.) This time, however, the Government's case was stronger in four respects.

First, Katisha Smith testified that: (1) she rented 11 Padelford; (2) for about four or five months prior to December 11, 2000, Weems had paid her $120 per month to store certain things at the apartment and had spent the night there

occasionally; (3) Weems had keys to the apartment and came and went as he pleased; (4) she did not own any firearms; and (5) she had never seen the shotgun revolver before. (10/15/01:161-63,169-70.)

Second, Christopher Macon testified that: (1) on December 11, 2000, he saw Weems at 11 Padelford with the shotgun revolver and (2) he saw Weems with the same gun within the prior month, also at 11 Padelford. (10/16/01:5-9,17-21.) Agent Troiano testified that Macon had reported the December 11 incident to him that same day, before the arrest. (10/15/01:44-45,56,127-29.)

Third, Officer O'Shaughnessy testified that during the security sweep that preceded Weems' arrest, and while checking to make sure that no one was hiding under the bed, he actually picked up the box spring and mattress. As he did so, he slid the mattress to one side to get a better grip on the box spring. (10/18/01:21-22,33-36,43,45.) He did not notice any gun there at the time. (10/18/01:25.)

Fourth, on cross-examination, Agent Troiano testified that Macon had seen Weems carrying the shotgun revolver on November 6, 2000, while Weems was in a car with Russell Yates. (10/15/01:129-30,138-39,142-43.)

**IV. <u>ISSUES</u>**

On direct appeal, Weems raised eight issues: (1) the sufficiency of the evidence introduced at his first trial, which

resulted in a consented-to mistrial, and whether the evidence at the first and second trials was sufficient in any event; (2) whether the Government advanced inconsistent theories of guilt warranting reversal under the plain error standard; (3) whether the Court erred in denying the motion to suppress the shotgun revolver; (4) whether the Court abused its discretion in admitting certain evidence under Fed. R. Evid. 404(b) and 403; (5) whether the court abused its discretion in limiting the defense examinations on three points; (6) whether there was plain error in three jury instructions; (7) that Weems did not consent to a mistrial in the first proceeding; (8) whether at sentencing the United States needed to prove beyond a reasonable doubt the predicate convictions underlying Weems' status as an armed career criminal; and (9) whether the language in the Armed Career Criminal Act of "not less than fifteen years" constitutes a statutory maximum as well as a minimum. The First Circuit rejected all of Weems' claims and affirmed his judgment and sentence. United States v. Weems, 322 F.3d 18 (1st Cir. 2003).

Weems raises two claims that he raised on direct appeal and lost, namely that his conviction was obtained by evidence gained in violation of the Fourth Amendment and that his conviction was enhanced based on convictions which were not proven to a jury. Other than these issues, Weems raises twelve new issues in this motion. All posit blame on his trial counsel. Weems claims

ineffective assistance of counsel when: (1) his counsel failed to argue issues of constructive possession during the Rule 29 hearing which would have cast doubt on the United States' arguments; (2) his counsel consented to a hung jury over his objection at the first trial and made mistatements of law and fact; (3) his counsel slept during direct-examination of Christopher Macon; (4) counsel never objected to the United States Marshals restraining Weems immediately following his counsel fainting at trial; (5) counsel failed to impeach Macon's credibility; (6) the Court failed to conduct a competency hearing after Weems' counsel fainted; (7) his counsel incorrectly advised Weems that Macon would not be permitted to testify at the second trial; (8) his counsel failed to report to the Court that a juror was sleeping; (9) his counsel failed to request a Franks hearing related to Christopher Macon; (10) his counsel failed to object to jury instructions on constructive possession and evidence relating to the search; (11) his counsel failed to call an unnamed fact witness who would have shown Weems' actual innocence; and (12) his counsel failed to seek to overturn Weems 1998 assault conviction.

For all of the reasons articulated below, Weems' motion should be denied.

## V. ARGUMENT

### A. Weems is Not Entitled to relief Under 28 U.S.C. § 2255

Weems filed his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 which states in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. A motion under 28 U.S.C. § 2255 is a substitute for habeas corpus. Relief is available under this section only if the same relief is available under the writ. Hill v. United States, 368 U.S. 424, 427 (1962). The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he has been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

In United States v. Addonizio, 442 U.S. 178, 184-185 (1979), the Supreme Court stated:

> It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment .... [U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited ....

> The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice .... Similar limitations apply with respect to claimed errors of fact.

442 U.S. at 184-85 (internal citations and quotations omitted). See also Davis v. United States, 417 U.S. 333, 346 (1974). A collateral attack may not substitute for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967) ("A 2255 proceeding is a collateral remedy available to a petitioner only when some basic fundamental right is denied, and not as routine review at the behest of a defendant who is dissatisfied with his sentence.") This motion is required to be filed within one year after entry of final judgment. United States v. Prescott, 221 F.3d 686, 687 (4th Cir. 2000). If a petitioner seeks certiorari, the one-year clock begins running from the date of which the Supreme Court denied certiorari. Weems' motion has been timely filed.

**B. Though Timely - Weems Has Waived His Right to Challenge the Majority of the Alleged Errors of Which He Complains**

Of his current claims, Weems raised only two on direct appeal. All other issues, not raised on direct review, are generally considered to be waived.

A defaulted claim generally cannot be heard on collateral review unless the petitioner can demonstrate either "cause" and

"prejudice" or "actual innocence." See e.g. Bousley v. United States, 523 U.S. 614, 622 (1998). This standard is more strict than the plain error standard applied on direct appellate review of defaulted claims. United States v. Frady, 456 U.S. at 164-66( holding that actual prejudice standard on collateral review presents "significantly higher hurdle" than plain error review).

By not raising the issues on appeal they are waived and Weems' motion should be denied. To overcome his procedural default on twelve of the issues he raises in the instant motion, Weems must establish cause and prejudice. See Sustache-Rivera v. United States, 221 F.3d 8, 17 (1st Cir.2000). Weems attempts to meet that standard, however, by claiming ineffective assistance of counsel. Here too his motion should be denied.[1]

**C. Weems Cannot Sustain A Claim Of Ineffective Assistance Of Counsel**

The Supreme Court has established a two-part test to evaluate ineffective assistance claims. Strickland v. Washington, 466 U.S. 668, 667 (1984); Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993). A party advancing such a claim has the heavy burden of proving: 1) that his attorney's performance fell below an objective standard of reasonable effectiveness, and

---

[1] Notably, Weems is not in the position of many defendants who are raising ineffective assistance of counsel claims in a § 2255 motion for the first time, i.e., complaining about counsel who represented them at trial and on appeal. Weems had one counsel for both trials and one counsel for sentencing and on appeal.

2) that counsel's deficient performance prejudiced the defense thus preventing a fair trial. Strickland, 466 U.S. at 688-89; Lema, 987 F.2d at 51.

To meet this burden, Weems must establish that his counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (citations and internal quotations omitted). See also Argencourt v. United States, 78 F.3d 14 (1st Cir. 1996) (setting out the background and standards applicable to ineffective assistance of counsel claims in § 2255 motions).

"Even if the defendant proves that counsel's performance was objectively unreasonable the requisite showing of prejudice requires more than postulating that counsel's errors had some conceivable effect on the outcome of the proceedings." Strickland, 466 U.S. at 694; United States v. Mala, 7 F.3d 1058,

1063 (1st Cir. 1993). The "prejudice" element of an ineffective assistance claim also presents a high hurdle. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. The requisite showing of prejudice requires more than postulating that counsel's "errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Rather, Weems must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Weems has demonstrated neither objectively unreasonable assistance nor prejudice for any of his claims. If a claim of ineffective assistance can be disposed of on the ground of lack of prejudice alone, the court should do so. Perron v. Perrin, 742 F.2d 669, 673 n. 2 (1st Cir. 1984).

**(1) Trial Counsel's Failure to Argue Issues of Constructive Possession at the Rule 29 Hearing at the First Trial Was Neither Unreasonable Nor Prejudicial**

Weems argues that at his first trial, while making his Rule 29 motion, his trial counsel failed to argue constructive possession and insufficiency of the evidence. Specifically, Weems contends that "[t]he government argued that evidence presented showed that there was no firearm present in the room or

vicinity until petitioner fell through the ceiling, that the evidence was indeed circumstantial, and that it was sufficient for the jury to find that petitioner had brought gun (sic) down with him through the ceiling." Ex. A to § 2255 Motion. Weems maintains that contrary to the Government's argument, it did not present any evidence that the gun was not in the room or vicinity before Weems fell from the ceiling.

Weems is mistaken about what his counsel argued to the Court. Weems trial counsel argued that the Government had not presented any evidence of knowledge or intent. (07/18/01:3.) The issues of knowledge and intent are issues relevant to the issue of whether Weems constructively possessed the firearm. See United States v. Escobar-DeJesus, 187 F.3d 148, 176 (1st Cir. 1999), cert. denied, 528 U.S. 1176 (2000) (quoting United States v. Wright, 968 F.2d 1393, 1398 (1st Cir. 1992) ("[A]s long as a convicted felon knowingly has the power and the intention at a given time of exercising dominion and control over a firearm or over the area in which the weapon is located, directly or through others, he is in possession of the firearm.") Trial counsel's argument directly addressed these issues. The Government's response to Weems' Rule 29 motion, i.e., that "there was no firearm in the room or in the vicinity until Mr. Weems fell through the ceiling" was based on Special Agent Troiano's testimony that when the officers cleared the bedroom, they did

not see any firearms in it. (07/18/01:12.) Thus, Weems' claim that the Government did not present any evidence that the gun was not in the room is also incorrect. Accordingly, his trial counsel's failure to argue lack of evidence on this issue was not unreasonable and his claim of ineffective assistance of counsel on this point fails.

**(2) Weems Cannot Show That His Counsel's Consent to a Mistrial Over His Objection Prejudiced the Defense**

Weems maintains that trial counsel was ineffective because he consented to a mistrial at the first trial without Weems' consent, thus resulting in no bar to his retrial and subsequent conviction. In order to meet the second half of the Strickland test, Weems must show that his "[counsel's] deficient performance prejudiced the defense." 466 U.S. at 687. Assuming the veracity of Weems' allegation, i.e., that his counsel consented to a mistrial over Weems' objection, Weems was not prejudiced as a result. After the jury had deliberated approximately four hours, the jurors sent a note to the Court stating "[w]e cannot reach a verdict." (07/19/01;2.) As the Court correctly noted, the issues before the jury in this case were fairly simple. (07/19/01:2.) Since the jury was deadlocked, the Court could have declared a mistrial without the consent of either Weems or his counsel. "Absent the defendant's consent, a long-standing rule establishes that retrial is barred unless there was a manifest necessity for the mistrial declaration, the classic example of which is a hung

jury." United States v. Rivera, 802 F.2d 593, 597 (2d Cir. 1986) (internal quotations omitted). See also United States v. Barbioni, 62 F.3d 5, 7 (1st Cir. 1995) (finding manifest necessity when mistrial due to hung jury).

Since Weems' consent to a mistrial was not necessary in these circumstances, trial counsel's alleged consent to a mistrial over his objection did not prejudice him and he cannot make out a claim for ineffective assistance of counsel on this issue. See United States v. Chestaro, 197 F.3d 600, 609-610 (2d Cir. 1999) (defense counsel's failure to consult with defendant prior to consenting to mistrial not ineffective assistance where jury deadlocked).

**(3) Weems Cannot Demonstrate That His Counsel Slept During His Trial, or Assuming the Veracity of His Claim, Any Prejudice Resulting**

Weems next claim of ineffective assistance of counsel is based on his claim that his counsel was "nodding off" during the Government's direct examination of Christopher Macon. In assessing Weems' claim, the Court may consider that Weems has failed to provide any affidavits supporting his contention. See e.g. Ortiz v. Artuz, 113 F. Supp.2d 327, 341-42 (E.D.N.Y. 2000) (applying Strickland -prejudice analysis where habeas petitioner did not present affidavits to support claim that counsel slept during trial, did "not state the frequency of counsel's unconsciousness, [or] point to any specific occasion in which

counsel slept while petitioner's interests were at stake"). Further, in determining whether there is any truth to Weems' claim, the Court may rely on its own recollection of the events at trial. See e.g. Gregory, 585 F.2d at 550 n. 4; DiCarlo, 575 F.2d at 954-955.

Indeed, the record belies Weems' claim that his counsel nodded off during Macon's direct examination -- his counsel objected during Macon's brief testimony. (10/16/01:2-11; 10/16/01:7.) Further, trial counsel's cross-examination of Macon on the second day of trial, immediately following Macon's direct testimony, addressed issues covered during his direct testimony. See e.g. (10/16/01:11-21.) Thus, Weems cannot show that his counsel's performance was so deficient that he was in effect not functioning as counsel and that Weems was prejudiced as a result. See United States v. Peterson, 777 F.2d 482, 484 (9th Cir. 1985) (per curiam). His claim on this issue fails.

**(4) Weems Cannot Demonstrate Any Prejudice Resulting from Trial Counsel's Failure to Inform the Court About the United States Marshals Restraint of Weems During Trial**

Weems next claim of ineffective assistance stems from his counsel's failure to inform the Court that immediately following his counsel fainting in the courtroom, the United States Marshals restrained Weems and directed him not to move. Again, Weems points to no prejudice which resulted from his counsel's failure to raise these points with the Court, points about which, the

Court was undoubtedly already aware.

The Marshals Service is charged with the movement of persons in custody in and around the courthouse, and responsible also for court security. See 28 U.S.C. § 566(a) ("It is the primary role and mission of the United States Marshals Service to provide for the security ... of the United States [Courts]."). Further, trial courts have always had the authority to maintain courtroom security. A court may restrain an inmate who is a party or witness when it is "necessary to maintain the security of the courtroom." United States v. Amaro, 816 F.2d 284, 285 (7th Cir. 1987). Indeed, in certain instances, after the proper showing by the United States at an evidentiary hearing, the Court may authorize the use of shackles or a stun belt to restrain a defendant at trial in the face of an "extreme need" to maintain the security in the courtroom. See United States v. O'Driscoll, 250 F. Supp. 2d 443, 451 (M.D. Pa. 2002). The question in such cases is whether in light of the need to maintain security in the courtroom, the use of restraints will impose a substantial burden on the defendant's constitutional rights. Id.

In Weems' case, the restraint about which he complains, and about which he contends his counsel was remiss in not bringing to the Court's attention, consisted of the United States Marshals "grabbing petitioner's shoulders and telling petitioner 'don't move'.". ¶ 12D § 2255 Mot. In so doing, the Marshals were

carrying out their duty to maintain security in the United States Courts. If in appropriate circumstances the use of shackles and a stun belt are not deemed to impose a substantial burden on a defendant's constitutional rights, Weems is hard pressed to argue that the actions about of which he complains did so. The actions of the Marshals were brief and necessitate by the confusion which resulted from trial counsel fainting. Accordingly, it was not unreasonable for his counsel to fail to raise this issue with the Court and no prejudice resulted from his failure to do so. Weems' claim of ineffective assistance on this point fails.

**(5) Weems' Counsel Was Not Ineffective in His Conducting His Cross-Examination of Christopher Macon**

Weems next claim is that after his counsel fainted on the second day of trial, he failed to pursue the same line of cross-examination, impeach Macon's credibility using Macon's prior gun conviction,[2] or cross-examine Macon on differences in the Government's notice of Macon's expected testimony and his trial

---

[2] A review of Macon's criminal history sheet shows that he was charged with carrying a concealed weapon on July 4, 1991. It is unclear from the criminal history if Macon was ever convicted of such a charge. Given the nature of the charge, the length of time that had passed since the charge was filed, it was reasonable for Weems' counsel to determine under Federal Rule of Evidence 609 that the Court would not have permitted Weems to use the gun "conviction" for impeachment purposes. The United States has not submitted Macon's criminal history sheet on the open docket because of privacy concerns, but should the Court desire to review it, the United States would be more than willing to file it under seal.

testimony. As with all of his other claims, Weems does not alleged any prejudice resulting from his counsel's failure to accord Weems' desired line of questioning. Therrein v. Vose, 782 F.2d 1, 3 (1st Cir. 1986) (without specific showing of errors and prejudice, ineffective assistance claim must fail); United States v. Fuller, 768 F.2d 343, 346 (1st Cir. 1985) (same).

Weems' trial counsel's cross-examination of Macon took place over the course of two days, was extremely thorough and covered the following issues: (1) Macon's refusal to meet with Weems' trial counsel prior to trial; (2) his breach of his cooperation agreement with the Bureau of Alcohol Tobacco and Firearms by selling and using drugs; (3) when Macon was first shown the gun he identified as having seen Weems with on the night of December 11, 2000; (4) whether Macon identified Weems upon first being shown his photograph by Special Agent Troiano; (5) the circumstances under which Macon first saw Weems; (6) how he recognized the gun; (7) the circumstances under which he saw Weems with the gun; (8) whether a case of domestic assault against Macon was dropped as a result of his work for ATF; (9) whether he received any promises or monetary remuneration in exchange for his testimony; and (10) whether Macon was shown any documents in order to prepare him for testifying. (10/16/01:11-21;10/18/01:4-17.)

Generally, the decision about whether and how to conduct

cross-examination is considered trial strategy and will rarely support a claim of ineffective assistance of counsel. See United States v. Soto-Alvarez, 958 F.2d 473, 479 (1st Cir. 1992). There is nothing in the record to suggest that trial counsel's failure to conduct further questioning beyond that outlined above was an unreasonable.[3] Counsel could have reasonably concluded that further cross-examination would have been repetitive and could have in fact strengthened Macon's testimony concerning the circumstances under which he viewed Weems with the gun. This is especially true for Macon's alleged firearms conviction. To question Macon about the "conviction" could have suggested he had a greater familiarity with firearms than the average person, thus bolstering Macon's credibility on his testimony that he had never seen a gun like the one Weems possessed on December 11, 2000. In order to make out his ineffective assistance claim on this issue, Weems must show prejudice in that "cross examination stood a likely chance to undermine the probative value of the witness' testimony (and thereby the verdict itself." United States v.

---

[3] Notably, in upholding the Court's limiting of cross-examination of a Providence Detective concerning details of leniency granted to Macon on other charges, the First Circuit stated "the informant's credibility was roundly attacked in . . . portions of cross-examination, which elicited both the existence of a cooperation agreement and the informant's criminal record. The additional examination that was denied could have elicited no more than a feather's weight on top of what was before the jury about his credibility." Weems, 322 F.3d at 25. The same can be said for the areas of cross-examination Weems presently contends his counsel was ineffective in failing to pursue.

Moreno Morales, 815 F.2d 725, 751-52 (1st Cir. 1987). This he has not done and his claim fails.[4]

**(6) Weems' Counsel Was Not Ineffective in Advising Him that Christopher Macon Would Not Be Permitted to Testify at the Second Trial Because Weems Knew of the Possibility that Macon Would Be Permitted to Testify**

Weems maintains that his counsel was ineffective because he advised Weems that Christopher Macon would not be permitted to testify at the second trial. Weems claims that he was prejudiced by that fact in that he relied solely on that advice in determining whether to proceed to trial the second time around. He points to an exchange between himself and Magistrate Judge Lovegreen immediately prior to picking the second jury as evidence of his reliance.

In fact, Weems' claim is belied by his exchange with Magistrate Judge Lovegreen. Initially, Weems refused to consent to the Magistrate empaneling the jury for his second trial. Weems informed Magistrate Lovegreen, "I had (sic) a problem with possibly if I sign a consent to pick a jury today, there may be

[4] Imbedded among Weems' ineffective assistance of counsel claims is his argument that the Court erred in failing to conduct a competency hearing after his counsel fainted in Court on the second day of the second trial. Weems did not raise this issue on appeal. Thus, unless he can demonstrate cause and prejudice for not raising this claim on direct appeal his claim must be rejected. Weems has not alleged either. Further, since Weems fails in his ability to make out any of his ineffective assistance of counsel claims, there is nothing to support his claim that his counsel was "incompetent" during the remainder of the trial.

future problems with pleadings with regards to discovery pleadings we have before Judge Torres in regards to a confidential informant." (10/02/01:1.) Weems further explained ". . . my concern, was with regards to if I sign a consent to pick a jury, I would be in effect saying that I'm ready for trial when I really don't know if I'm relative (sic) to trial. I don't know what the judge is going to do according to motions. **If the judge rules to keep the informant in to testify, there may be information I'm entitled to the government has.** (sic) If I sign the form, I may be waiving any future pleadings with, in regard to that." (10/02/01:2 (emphasis added).) Weems' statements to the Court demonstrate that he recognized the possibility that the Court would permit Macon to testify. In addition, Weems' main concern was that if Macon was permitted to testify, was the Court going to permit him a continuance after impanelment in order to seek relevant discovery. (10/02/01:4) Thus, Weems clearly knew there was a possibility that Macon was going to testify at his second trial and was planning for that eventuality. Moreover, once the Court ruled on his motion to exclude Macon from testifying, or even after hearing Macon's testimony, nothing prevented Weems from seeking to plead guilty in an attempt to obtain some leniency from the Court at the time of sentencing. Thus, Weems' claim of ineffective assistance of counsel on this point fails.

**(7) Trial Counsel Was Not Ineffective in Failing to Advise the Court That Weems Observed a Juror Sleeping**

Weems' next claim of ineffective assistance of counsel is based on his counsel's failure to report to the Court that Weems had observed a juror sleeping during trial.

Weems' contention that he observed a juror sleeping is not evidence that it in fact occurred. The Court may rely on its own recollection in assessing the veracity of Weems' claim. Moreover, it is just as likely that the alleged juror was daydreaming or concentrating with his or her eyes shut. See e.g. Guinyard v. Keane, No. 00 CV 6841(JBW), 2002 WL 459923, at *1 (E.D.N.Y. Feb. 27, 2002) (Attach. A). "Even if [Weems'] trial counsel saw a distracted juror, it was among the objectively reasonable strategic choices for counsel to forgo an objection. The juror in question may have been one that defense counsel favored and wanted to keep." Id. Further, knowing that it is the jurors' collective memory that ultimately controls, one sleeping juror is not necessarily cause for concern. Thus, Weems cannot demonstrate that his counsel's performance was deficient nor has he pointed to any prejudice resulting. His claim of ineffective assistance of counsel on this issue fails.

**(8) Weems Cannot Demonstrate that His Trial Counsel Acted Unreasonably In Failing to Request a Franks Hearing Concerning Factual Discrepancies Between Christopher Macon's Statements and Special Agent Troiano's Statements of What Macon Told Him**

Weems maintains that his trial counsel was ineffective because he failed to request a Franks hearing based on discrepancies between Christopher Macon's statements and Special Agent Troiano's reports in which he recites information Macon reported to him.

A Franks hearing is the primary vehicle for challenging a warrant by impeaching the affiant. See United States v. Adams, 305 F.3d 30, 36 n. 1 (1st Cir. 2002); see also Franks v. Delaware, 438 U.S. 154 (1978) In Weems' case, there was no warrant to challenge. Weems was arrested pursuant to two outstanding state arrest warrants. (06/25/01:5) Neither Agent Troiano nor Macon provided information for those warrants. The police went to 11 Padelford based on information that they had obtained from Christopher Macon that he had seen Weems "staying off and on at 11 Padelford Street." Weems, 322 F.3d at 21-22. Macon's tip to the police provided only the location that Weems could be found - the arrest warrants were already in existence.

Moreover, in his present motion, Weems merely states that there were "factual disputes" between Macon's and Troiano's statements which would have warranted a Franks hearing. He fails to identify the factual disputes to which he objects. A Franks

hearing is required "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affined in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." Franks, 438 U.S. at 155. Nowhere does Weems allege that either Macon or Troiano made false statements with reckless disregard for the truth. See Adams, 305 F.3d at 36 n. 1(noting that "[m]ere inaccuracies, even negligent ones, are not enough" to warrant a Franks hearing). Accordingly, because there was no warrant to challenge, and because Weems has not pointed to any statements which he contends were made with reckless disregard for the truth, his counsel's failure to request a Franks hearing was not unreasonable and his claim of ineffective assistance of counsel on this point fails.

**(9) Weems' Counsel Did Not Render Ineffective Assistance In Failing to Object to Jury Instructions on Constructive Possession Whether the Evidence Found at 11 Padelford was Properly Admitted**

Weems next claim of ineffective assistance of counsel relates to his counsel's failure to object to the Court instructing the jury on the law of constructive possession. Weems maintains that Special Agent O'Shaughnessy's testimony refuted the possibility that the jury could find him guilty of possession of a firearm on any theory other than one of actual

possession. In addition, Weems maintains that his counsel should have objected to the Court's instruction regarding whether the evidence, i.e. the firearm, found at 11 Padelford was properly admitted.

Weems' claims fail for a number of reasons. First, there was ample evidence supporting the theory that Weems constructively possessed the gun. Even if the jury concluded that the gun was not within Weems's immediate reach when he was pulled through the ceiling and onto the bed, it still could have found (based on Macon's testimony alone) that the gun belonged to Weems and that at the very least he had the ability and the intention to exercise control over the gun.

Further, Weems cannot show that he was prejudiced as a result of counsel's failure to object to the Court instructing the jury on the law of constructive possession. In addressing the merits of his appeal, in which Weems argued that there was insufficient evidence to convict him of either actual or constructive possession, the First Circuit concluded that the jury had sufficient evidence to conclude that there was actual possession. Weems, 322 F.3d at 24-25. Thus, because the jury could properly conclude that Weems actually possessed the firearm, no prejudice could have resulted from also instructing them on the law of constructive possession.

As for Weems' claim that his counsel should have objected to

the Court's instruction on the evidence seized from 11 Padelford Street, his argument is meritless. At the second trial, the defense attempted to establish that the shotgun revolver was discovered as a result of a broad search which took place after Weems was arrested. As a result, the Court instructed the jury that the evidence on this issue and the related issue of whether officers had damaged property at 11 Padelford was "relevant only to the extent that it may bear on your decision as to whether Mr. Weems actually possessed the firearm that has been introduced in evidence as Government Exhibit 1." (10/19/01:53-54.) The Court continued: "So the firearm is properly part of the evidence in the case and it's not up to you to decide whether it was seized legally or not seized legally. The issue for you to decide is simply whether Mr. Weems possessed the firearm, either actually or constructively." (10/19/01:54.)

The Court's instructions did not prohibit the jury from considering the disputed evidence in assessing the officers' credibility. The Court made clear that the jury could consider that evidence in deciding whether to believe the officers' testimony that they discovered the gun in plain view just after Weems was subdued, not during a broad search of the house. (10/19/01:53-54.) The fact that the Court did not use the word "credibility" is of no moment.

Contrary to Weems' assertions, although at one point the

Court said that the disputed evidence was relevant "to whether Mr. Weems actually possessed the firearm" (10/19/01:53), the jury would not have understood this to mean that the evidence was irrelevant to its consideration of the constructive possession theory, especially since, only four sentences later, the Court made clear that "[t]he issue for you to decide is simply whether Mr. Weems possessed the firearm, either actually or constructively." (10/19/01:54) (emphasis added). In the contested sentence, the Court merely used the word "actually" to emphasize that the key issue was whether, in fact, Weems possessed the firearm.

Weems' present concern is presumably that the Court's statement that "the firearm is properly part of the evidence in the case" (10/19/01:54), would have been interpreted by the jury to mean that there was no dispute that Weems possessed the firearm, thereby relieving the Government of its duty to prove this element beyond a reasonable doubt. This claim is fails for two reasons. First, in the very sentence in which the quoted language appears, the Court made plain that the firearm was "properly part of the evidence" in the sense that it was admitted evidence and it was not for the jury "to decide whether it was seized legally or not seized legally." (10/19/01:54.) Second, in the very next sentence, the Court emphasized that "[t]he issue for you to decide is simply whether Mr. Weems possessed the

firearm, either actually or constructively." (10/19/01:54.) Thus, it was not unreasonable for Weems' counsel to fail to object to the instruction, and his ineffective assistance of counsel claim on this issue fails.

**(10) Weems Has Not Made Out a Claim of Ineffective Assistance of Counsel on his Claim that His Counsel Failed to Call a Fact Witness Whom Weems Contends Could Have Shown His Actual Innocence**

As part of his ineffective assistance of counsel claims, Weems has included a claim that his counsel "failed to call important facts (sic) witness which would have shown petitioners (sic) actual innocence, and counsel failed to cross-examine trial witness on important facts . . . which were exculpatory and would have shown petitioners (sic) actual innocence." ¶ 12D § 2255 Mot. It is virtually impossible to assess the merits of Weems' claim because he has not identified the fact witness who he contends his counsel should have called and about what he or she would have testified. The same is true for his claim that his counsel failed to conduct some unspecified cross-examination of unidentified trial witnesses.

Generally, however, decisions about what witnesses to call and the areas and extent of cross-examination are considered trial strategy. <u>United States v. Ortiz-Oliveras</u>, 717 F.2d 1, 3 (1st Cir. 1983). Courts are loath to second-guess counsel's strategic decisions at trial. Without detailing the specifics of

the testimony Weems claims his counsel should have presented or elicited on cross-examination, it is impossible to assess whether his counsel's trial strategy was reasonable or whether Weems was prejudiced as a result of his counsel's failure to act. On this basis, the Court should deny his claim.

**(11) Weems Cannot Make Out a Claim of Ineffective Assistance of Counsel on his Claim that His Counsel Failed to Seek to Vacate His 1998 Assault Conviction**

Weems claims that his counsel was ineffective because he failed to seek to vacate Weems' 1998 conviction for assault. Weems admits that he pleaded guilty to that offense, but claims that the proceedings against him were improper under the Interstate Agreement On Detainers (IAD) because after Weems filed notice under the IAD, it took the State of Rhode Island more that 180 days to conclude his state proceedings. Weems also concedes that he weighed the likelihood of obtaining dismissal of the assault charge on that basis, but decided to plead guilty because his counsel at the time advised him he might end up serving more time for violating his probation than on the assault charge. ¶12E § 2255 Mot.

AS with his other ineffective assistance of counsel claims, Weems' argument fails because he did not raise this claim on direct appeal and he cannot show that his counsel acted unreasonably in not pursuing the vacation of his 1998 state assault conviction. Weems' counsel's actions in this regard were

not unreasonable for the following reasons.

A defendant who pleads guilty waives the right to trial by jury, the presumption of innocence, the state's burden to prove his guilty beyond a reasonable doubt, the privilege against self-incrimination, the right to confront and cross-examine her accusers, the right to testify and call witnesses in her defense, and the right to appeal her conviction to the State Supreme Court. See State v. Williams, 404 A.2d 814, 818 (1979). Further, by pleading guilty, Weems waived his right to object to his indictment as having been untimely pursued under the IAD. See e.g. New York v. Hill, 528 U.S. 110, 114 (2000)(collecting cases in which defendants have waived right to object to timeliness of prosecution under IAD). In light of Weems' plea, which he does not contend was made involuntarily, it was not unreasonable for his trial counsel to fail to pursue the vacation of his state assault conviction. He cannot now complain that his assault conviction should be overturned, or that his counsel in this case was ineffective for failing to pursue such relief. Weems' claim of ineffective assistance of counsel on this point should be rejected.

**(12) Weems' Due Process Rights Were Not Violated By Use of Prior Convictions At Sentencing Which Were not Proven to a Jury Beyond a Reasonable Doubt**

Weems maintains that at the time of sentencing, the Court relied on prior convictions to enhance his sentence which were

not proven to a jury. The First Circuit already rejected his claim on direct appeal. Weems, 322 F.3d at 26. Further, the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004) does not change this result.

Weems' sentence and conviction became final on October 1, 2003, the day the Supreme Court denied his petition for a writ of certiorari. See United States v. Hicks, 283 F.3d 380, 387 (D.C. Cir. 2002); Kaufman v. United States, 282 F.3d 1336, 1337-38 & n.2 (11th Cir. 2002); Green v. United States, 260 F.3d 78, 84 (2d Cir. 2001) Thus, Weems' sentence and conviction were final well before Blakely was decided. The Blakely rule, which extends the rule in Apprendi v. New Jersey, 530 U.S. 466 (2000), cannot apply retroactively in light of the Teague doctrine, even assuming that Blakey applies to the federal sentencing guidelines. See Screwier v. Summerlin, 124 S. Ct. 2519, 2524-26 (2004) (Teague bars retroactive application of Apprendi-based death penalty decision of Supreme Court in Ring v. Arizona, 536 U.S. 584 (2002)); Sepulveda v. United States, 330 F.3d 55, 59-63 (1st Cir. 2003) (Apprendi is not retroactively applicable under Teague).

Indeed, a recent District of Maine opinion is on point. See Orchard v. United States, 332 F. Supp. 2d 275, 277 (D. Maine 2004)(" ... the extension of the Apprendi rule announced in Blakey is a rule of criminal procedure that may not be applied retroactively.") (collecting cases); See also Burrell v. United

States, 384 F.3d 22, n.5 (2d Cir. 2004); U.S. v. Stancell, 2004 WL 2738828, *2 (D.D.C. Dec 02, 2004) (No. CRIM. 02-0374(PLF)) (Attach. B). Accordingly, Weems' argument that the Government was required to prove his prior convictions to a jury beyond a reasonable doubt is meritless.

**(13) Weems Cannot Maintain His Present Challenge that His Conviction Was Obtained By Use of Evidence Obtained Pursuant to an Unconstitutional Search and Seizure**

In his present § 2255 motion, Weems asserts that his conviction was obtained by use of evidence obtained in violation of the Fourth Amendment. Weems has already challenged the seizure of the firearm in his motion to suppress before the Court, as well as on appeal before the First Circuit. This Court denied Weems' motion to suppress. After detailing the facts found by the Court, the First Circuit upheld the Court's denial of the suppression motion on the grounds that the officers' initial entry into the apartment at 11 Padelford Street was justified by exigent circumstances and that seizure of the gun was correct because it was found in plain view. Weems, 322 F.3d at 21-24.

It is clear that Fourth Amendment claims may not be raised in a petition under 28 U.S.C. § 2255. See Stone v. Powell, 428 U.S. 465, 494 (1976) (state prisoner may not obtain habeas corpus relief based on a Fourth Amendment claim); id. at 519 n.14 (Brennan, J., noting in dissent that earlier decision allowing such claims under § 2255 "obviously does not survive" majority

decision); United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (assuming that Stone holding applies to § 2255 petitions); United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993) (expressly holding that Stone applies to § 2255 petitions); United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980) (same); Curzi v. United States, 773 F. Supp. 535, 540-41 (E.D.N.Y. 1991) (same), aff'd on other grounds, 973 F.2d 107 (2d Cir. 1992). See also Baldyga v. United States, 337 F. Supp.2d 264, 266-67 (D. Mass. 2004) (citing District of Massachusetts cases applying Stone to prisoners convicted of federal crimes). Accordingly, Weems Fourth Amendment challenges must be denied.

## VI. Conclusion

Based upon the foregoing reasons, the United States respectfully requests that the Court deny Weems' § 2255 motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

DULCE DONOVAN
Assistant U.S. Attorney
50 Kennedy Plaza
8th Floor
Providence, RI 02903
(401) 709-5000

Dated: January 6, 2005

# Attachment A

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Fitzgerald GUINYARD, Petitioner,
v.
John P. KEANE, Respondent.

**No. 00 CV 6841(JBW).**

Feb. 27, 2002.

MEMORANDUM, ORDER AND JUDGMENT

WEINSTEIN, Senior District J.

***1** This petition raises a sleeping juror claim. For the reasons stated below it does not support habeas corpus relief.

Petitioner was convicted after trial of the crimes of robbery in the second degree and reckless endangerment in the first degree following a bank robbery in which a shot was fired by the robbers. Acquitted of a variety of crimes including robbery in the first degree, attempted murder and attempted aggravated assault on a police officer, he was sentenced to consecutive terms of five to ten years on the robbery count and two and one-third to seven years on the reckless endangerment count.

On appeal the conviction was affirmed, *People v. Guinyard*, 273 A.D.2d 251, 709 N.Y.S.2d 839 (N.Y.App. Div.2d Dep't 2000), 714 N.Y.S.2d 4 (2000). Apparently no collateral state proceedings followed.

He now raises the same contentions rejected by the Appellate Division: (1) inadequate instruction on identification; (2) a sleeping juror; (3) inadequate basis for stop and frisk; (4) ineffective trial counsel; and (5) insufficient evidence to convict. The Appellate Division justifiably held that the frisk was incidental to a lawful arrest; the evidence sufficed; trial counsel was effective and the remaining contentions were unpreserved. A reading of the state record demonstrates adequate support for the conclusions of the Appellate Division.

The only intriguing point worth discussing is that involving an alleged sleeping juror. Even if, as the Appellate Division properly found, this issue was not specifically preserved for appeal because no objection was taken by trial counsel, the failure might be a basis for claiming inadequacy of trial counsel--an issue the appellate court implicitly found was properly raised.

The sleeping juror contention is based upon a comment made by the trial court during its lengthy charge. Apparently addressing the jury, the court declared:

> Everybody awake here? Let me see. We have someone who is--wake up. All right.

Record at 1471. The court continued with the charge. This matter was not mentioned again.

There is no proof that a juror was asleep. The court's statement may have been designed to perk up a juror whose eyes appeared glazed over and who was on the edge of nodding or lapsing into sleep. We do not know. There is no way that question of fact can now be resolved. Judicial notice can, however, be taken of decisive consideration. *See* Federal Rules of Evidence § 201(a) (facts "generally known within the territorial jurisdiction of the trial court").

A person's closed eyes and relaxed body do not necessarily demonstrate sleep. Some people lower their lids to help concentration, although a perceptive judge can usually spot a snoozer.

A single member of the panel may exhibit attention-wander or even drift into daydreaming or, from time-to-time, a form of comatoseness that might be characterized as sleep. Yet, the remaining jurors in the box can pick up the reception slack. The combined memories of the jury tends to be remarkably comprehensive.

***2** Many of our jurors hold jobs at night or have responsibilities at home that give them little rest. Were we to impose on each juror the impossible task of keeping fully alert at each moment of trial, we would be demanding the impossible.

Here the trial judge was himself vigilant and aware

of the need to communicate to a jury that appeared to be listening. He took adequate steps to protect the defendant. That petitioner's lawyer did not pursue the matter further demonstrated good litigation sense rather than incompetence.

When necessary, trial counsel adequately protected petitioner's rights. *See e.g.,* transcript 109 ff (*Sandoval* hearing); 338-39 (investigation by counsel); 370-377 (opening); 624-635 (cross); 1089-90 (contention on framing); 1283 (corporeal demonstration); 1315 (fruits of crime); 1325 (objection to charge); 1372-1406 (summation); *but see* 244-250, 251-257 (petitioner's request to replace counsel).

The petition is dismissed. A certificate of appeal is granted on the issue of adequacy of counsel in failing to assure an alert jury.

As part of the appeal it will be necessary to consider whether the sleeping juror issue was sufficiently included in the claim of counsel deficiency as to have been exhausted. *See Desmond Jones v. D.A. Senkowski,* slip op., Docket No. 00-2145 (2nd Cir. Amended Feb. 21, 2002). The respondent has stipulated that it is exhausted, but it is not clear that a stipulation suffices under *Jones.*

SO ORDERED.

2002 WL 459923 (E.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

1:00CV06841 (Docket)
(Nov. 14, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Attachment B

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.

UNITED STATES of America,
v.
Jean STANCELL and Silvader Denise Estep,
Defendants.

**No. CRIM. 02-0374(PLF).**

Dec. 2, 2004.

**Background:** Defendant moved to modify conditions of her supervised release, and a second defendant moved to modify and reduce her sentence.

**Holding:** The District Court, Paul L. Friedman, J., held that even if Supreme Court's ruling in *Blakely v. Washington*, which provided that a defendant had a Sixth Amendment right to have a jury decide, beyond a reasonable doubt, any fact that might increase his or her sentence, applied to the federal Sentencing Guidelines, it did not apply retroactively on collateral attack.

Motions denied.

**Courts 100(1)**
106k100(1) Most Cited Cases

Even if Supreme Court's ruling in *Blakely v. Washington*, which provided that a defendant had a Sixth Amendment right to have a jury decide, beyond a reasonable doubt, any fact that might increase his or her sentence, applied to the federal Sentencing Guidelines, it was a "new rule" that was not dictated by existing precedent, and thus did not apply retroactively on collateral attack. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

John Robert Fisher, Assistant U.S. Attorney, U.S. Attorney's Office, Washington, DC, for Plaintiff-Appellee.

A.J. Kramer, Michelle M. Peterson, Federal Public Defenders, Washington, DC, for Defendants-Appellants.

*MEMORANDUM OPINION AND ORDER*

PAUL L. FRIEDMAN, District Judge.

***1** This matter is before the Court on defendant Jean Stancell's motion to modify her conditions of supervised release and defendant Silvader Denise Estep's motion to modify and reduce her sentence. Both motions have as their basis the Supreme Court's recent holding in *Blakely v. Washington*, --- U.S. ----, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Both defendants agree that their motions should be treated as motions filed under 28 U.S.C. § 2255. Upon consideration of defendants' motions, the government's oppositions and defendant Stancell's reply, the Court concludes that both motions should be denied. [FN1]

Defendants maintain that the various upward adjustments included in calculating their sentences violated their Sixth Amendment right to a jury under *Blakely* because the facts supporting the increases were neither admitted to by the defendants nor found by a jury. *See* Motion to Modify Conditions of Supervised Release in Light of Blakely Decision ("Stancell Mot.") at 1-2; Defendant's Motion to Modify and Reduce Sentence ("Estep Mot.") at 3. [FN2] The government responds that *Blakely* constitutes a new constitutional rule of criminal procedure and therefore may not be retroactively applied on collateral attack. *See* Government's Opposition to Defendant's Motion to Modify Conditions of Supervised Release ("Stancell Opp.") at 1. [FN3]

The Supreme Court has held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301, 109 S.Ct. 1060. The Seventh Circuit has expressly held that *Blakely* "was not dictated or compelled by *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ]or its progeny." *Simpson v. United States*, 376 F.3d 679, 681 (7th Cir.2004). As the government notes, prior to *Blakely*, the courts of appeals all agreed that enhancements such as those

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

challenged here did not run afoul of *Apprendi. See, e.g.,* United States v. Samuel, 296 F.3d 1169, 1172 (D.C.Cir.2002). [FN4] The Court therefore concludes that if *Blakely* applies to the Federal Sentencing Guidelines, it is a "new rule" that was not dictated by existing precedent. Indeed, defendant Stancell concedes that the Supreme Court's decision in *Blakely* is a new constitutional rule of criminal procedure. *See* Reply to Government's Opposition to Defendant's Motion to Modify Conditions of Supervised Release ("Stancell Rep.") at 2.

If a case announces a new rule, then that rule may be applied retroactively only if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or it constitutes a "watershed rule[ ] of criminal procedure" implicating fundamental fairness and accuracy of the criminal proceeding. *Teague v. Lane,* 489 U.S. at 311, 109 S.Ct. 1060; *see also* United States v. Lafayette, 337 F.3d 1043, 1046-47 (D.C.Cir.2003). The first exception is not applicable to this case. With respect to the second exception, the Supreme Court, in declining to apply *Ring v. Arizona* retroactively, noted that the question is whether "judicial factfinding so seriously diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." *Schriro v. Summerlin,* --- U.S. ----, ----, 124 S.Ct. 2519, 2525, 159 L.Ed.2d 442 (2004) (quotations omitted)(citing *Teague v. Lane,* 489 U.S. at 312-313, 109 S.Ct. 1060). The Supreme Court found that *Ring* was not a "watershed rule" because when "so many presumably reasonable minds continue to disagree over whether juries are better factfinders *at all,* we cannot confidently say that judicial factfinding *seriously* diminishes accuracy." *See id.* (emphasis in original); *see also* United States v. Latney, 131 F.Supp.2d 31, 34 (D.D.C.2001) ("shifting of an element of the offense from the judge to the jury and requiring proof of such element beyond a reasonable doubt rather than by a preponderance of the evidence does not directly relate to the accuracy of the conviction or sentence, nor does it implicate fundamental fairness"). [FN5] The Supreme Court's decision in *Schriro,* "has strongly implied that *Blakely* is not to be applied retroactively." *In re Dean,* 375 F.3d 1287, 1290 (11th Cir.2004).

***2** The D.C. Circuit has not yet addressed the question of whether *Blakely* should be applied retroactively, but other courts have found *Blakely* not to apply when convictions are attacked collaterally. *See Mulvihill v. Garcia,* 113 Fed.Appx. 289, 290 n. 1, 2004 WL 2668417 at *1 n. 1 (9th Cir.2004) (*Blakely* does not apply retroactively to cases on collateral review); *United States v. Beatty,* 103 Fed.Appx. 785, 2004 WL 1759028 (4th Cir.2004) ("*Blakely* does not apply in the Section 2255 context"); *United States v. Falodun,* No.Crim.01-380, 2004 WL 2397612 (D.Minn. Oct. 25, 2004) (citing *Schriro* and holding that *Blakely* is not a watershed rule); *Orchard v. United States,* 332 F.Supp.2d 275 (D.Me.2004) (same). [FN6] This Court also finds that *Blakely* is inapplicable to cases on collateral review. The Court will deny defendants' motions without prejudice to their renewal, however, should the Supreme Court hold in *United States v. Booker,* No. 04-104 and *United States v. Fanfan,* No. 04-105 that *Blakely* applies to the Federal Sentencing Guidelines and that it should be applied retroactively in collateral proceedings.

Defendant Stancell finally argues that even if the *Blakely* decision is not applied retroactively, the Court should, as an equitable matter, modify defendant Stancell's conditions of release to relieve her of the obligation to complete the last two months of her electronic monitoring if the Court would not have imposed electronic monitoring had *Blakely* been decided before sentencing. This the Court declines to do.

Accordingly, it is hereby

ORDERED that defendant Stancell's motion to modify the conditions of her supervised release is DENIED without prejudice; and it is

FURTHER ORDERED that defendant Estep's motion to modify and reduce her sentence is also DENIED without prejudice.

SO ORDERED.

FN1. Although the time for filing a reply in support of Ms. Estep's motion has not yet expired, because the Court concludes that the Supreme Court's holding in *Blakely* does not apply to petitions for collateral review, the Court will deny Ms. Estep's motion at this time.

FN2. The Court did, however, conduct a three-day evidentiary hearing and found by a preponderance of the evidence all of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

facts necessary to apply the upward adjustments.

FN3. The government notes that although defendant Stancell filed a notice of appeal on December 29, 2003, she subsequently filed a motion to dismiss her appeal and the motion was granted on February 13, 2004. *See* Stancell Opp. at 2. The government also notes that defendant Estep filed a notice of appeal on September 22, 2003, but also filed a motion to dismiss the appeal and the motion was granted on February 9, 2004. *See* Government's Opposition to Defendant's Motion to Modify and Reduce Sentence ("Estep Opp.") at 2.

FN4. Justice O'Connor dissenting in *Blakely* warned that "despite the fact that we hold in *Schriro v. Summerlin* [124 S.Ct. 2519 (2004) ] that *Ring* [*v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ] (and *a fortiori Apprendi* ) does not apply retroactively on habeas review, all criminal sentences imposed under the federal and state guidelines since *Apprendi* was decided in 2000 arguably remain open to collateral attack," *See Blakely v. Washington,* --- U.S. ----, ----, 124 S.Ct. 2531, 2549, 159 L.Ed.2d 403 (2004) (O'Connor, J. dissenting). This view, however, has not been endorsed by a majority of the Supreme Court.

FN5. This Court does not suggest that either juries or the reasonable doubt standard do not play "vital role[s] in the American scheme of criminal procedure." *In re Winship,* 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). But, unless *United States v. Booker,* No. 04-104 and *United States v. Fanfan,* No. 04-105 or their progeny change the holdings of *Ring* and *Schriro,* this Court cannot conclude that any holdings announced in *Blakely* should be applied retroactively in collateral proceedings.

FN6. Many courts of appeals have also noted that the Supreme Court did not expressly make the *Blakely* decision retroactive, thus failing to make *Blakely* an appropriate basis for a second or successive motion pursuant to Section 2255. *See Carmona v. United States,* 390 F.3d 200, ----, 2004 WL 2699880 at *2 (2d Cir.2004) (because Supreme Court has not announced *Blakely* to be a new rule of constitutional law, nor has the Court held it to apply retroactively, court of appeals refused to grant authority to file second Section 2255 petition); *Cuevas v. Derosa,* 386 F.3d 367, 368 (1st Cir.2004) (same); *United States v. Smith,* 111 Fed.Appx. 184, 2004 WL 2368076 (4th Cir.2004) (same); *Leonard v. United States,* 383 F.3d 1146, 1148 (10th Cir.2004) (same); *United States v. Ford,* 383 F.3d 567, 568 (7th Cir.2004) (same); *In re Dean,* 375 F.3d 1287, 1290 (same).

2004 WL 2738828 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

1:02CR00374 (Docket)
(Sep. 06, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **IKE WEEMS,** | : | |
| | : | |
| **Petitioner** | : | **C.A. No. 04-421T** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Respondent** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of January, 2005, I forwarded a copy of United States' Objection to Defendant's Motion to Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 and supporting memorandum, by postage prepaid mail, to:

Ike Weems
U.S. P. Big Sandy
P.O. Box 2068
Inez, NY 41224

UNITED STATES DISTRICT COU[illegible]
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **IKE WEEMS,** | : | |
| | : | |
| **Petitioner** | : | **C.A. No. 04-421T** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Respondent** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of January, 2005, I forwarded a copy of United States' Objection to Defendant's Motion to Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 and supporting memorandum, by postage prepaid mail, to:

Ike Weems
U.S. P. Big Sandy
P.O. Box 2068
Inez, NY 41224

[signature]