Attachment D

*668 87 Fed.Appx. 668

This case was not selected for publication in the Federal Reporter

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. (FIND CTA9 Rule 36-3.)

United States Court of Appeals,
Ninth Circuit.

**UNITED STATES of America, Plaintiff--Appellee,**
**v.**
**Randall E. MOORE, Defendant--Appellant.**
**United States of America, Plaintiff--Appellee,**
**v.**
**Carl R. Hanley, Defendant--Appellant.**
**United States of America, Plaintiff--Appellee,**
**v.**
**William B. Scott, Defendant--Appellant.**

**Nos. 02-15532, 02-15534, 02-15550.**
Submitted Dec. 1, 2003. (FN*)

Decided Feb. 11, 2004.

**Background:** Following affirmance of their convictions for wire fraud and money laundering, 190 F.3d 1017, and denial of one prisoner's motion to vacate sentence, 322 F.3d 1198, federal prisoners filed § 2255 motions to vacate, set aside, or correct sentence. The United States District Court for the District of Nevada, Edward C. Reed, J., denied motions, and prisoners appealed.

**Holdings:** The Court of Appeals held that:

(1) prisoners were not denied effective assistance as result of counsel's failure to argue that sentencing court should have applied clear and convincing evidence standard in assessing their sentencing enhancements, but

(2) district court abused its discretion by not conducting evidentiary hearing regarding claim that counsel slept during trial.

Affirmed in part, reversed in part, and remanded.

Leavy, Circuit Judge, concurred in part, dissented in part, and filed opinion.

West Headnotes

[1] Criminal Law 641.13(7)

110 ----
110XX Trial
110XX(B) Course and Conduct of Trial in General
110k641 Counsel for Accused
110k641.13 Adequacy of Representation
110k641.13(2) Particular Cases and Problems
110k641.13(7) Post-Trial Procedure and Review.

Defendants were not denied effective assistance of counsel as result of counsel's failure to argue that sentencing court should have applied clear and convincing evidence standard in assessing their sentencing enhancements, not preponderance of evidence standard, where district judge stated that he would have decided sentencing enhancement issue same way applying higher standard of proof. U.S.C.A. Const.Amend. 6.

[2] Criminal Law 1655(6)

110 ----
110XXX Post-Conviction Relief
110XXX(C) Proceedings
110XXX(C)3 Hearing and Determination
110k1651 Necessity for Hearing
110k1655 Particular Issues
110k1655(6) Counsel.

District court abused its discretion by not conducting evidentiary hearing before denying § 2255 motion to vacate based on allegation that defendant was denied effective assistance because counsel slept during trial, even though judge that conducted trial stated that he did not observe counsel sleeping, where counsel for one of codefendants stated in declaration that defendant's attorney slept during portions of trial, and attorney admitted that he had practice of taking off his glasses and keeping his eyes closed for lengthy periods of time, which should have appeared to judge that he was sleeping. 28 U.S.C.A. § 2255.

*669 Appeal from the United States District Court for the District of Nevada; Edward C. Reed, District

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

Judge, Presiding. D.C. No. CR-95-00312-ECR, CV-01-00193-1-ECR, CV-00-00867-LDG, CV-01-00218-ECR.

Michael S. McGarry, Washington, DC, for Plaintiff-Appellee.

Carl R. Hanley, pro se, Randall E. Moore, pro se, North Las Vegas, NV, Christopher R. Oram, Las Vegas, NV, John C. Kiehlmeier, Law Offices of John C. Kiehlmeier, Santa Ana, CA, for Defendant-Appellant.

Before LEAVY, PAEZ, and BERZON, Circuit Judges.

MEMORANDUM (FN**)

Randall E. Moore, William B. Scott, and Carl R. Hanley appeal the district court's denial of their motions, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct their sentences. Appellants argue that their counsel on direct appeal provided ineffective assistance by failing to argue, based on a recent Ninth Circuit opinion, that the sentencing court should have applied a clear and convincing evidence standard in assessing their sentencing enhancements, not a preponderance of the evidence standard. Appellant Scott additionally argues that the district court in his habeas proceeding erred by not holding an evidentiary hearing or otherwise expanding the record to determine if his trial counsel was ineffective because he slept during the trial. We review the denial of appellants' § 2255 motion *de novo. Doganiere v. United States,* 914 F.2d 165, 167 (9th Cir.1990).

I

[1] To prevail on a claim of ineffective assistance of counsel, appellants must show (1) that their counsel's performance was deficient, and (2) that this deficient performance prejudiced their defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Even if we assume that appellate counsel's failure to mention *United States v. Hopper,* 177 F.3d 824, 832 (9th Cir.1999), constituted deficient performance, appellants' sentencing argument cannot meet the second prong of *Strickland.*

In each case, the district court stated in deciding the § 2255 motion that he would have decided the sentencing enhancement issue the same way applying the higher standard of proof. Appellants have not "affirmatively prove[d]" otherwise. *United States v. Fry,* 322 F.3d 1198, 1201 (9th Cir.2003) (citing *Strickland,* 466 U.S. at 693, 696). They point to nothing in the record demonstrating that the pertinent factual determinations were sufficiently close that it is reasonably likely that their sentences would have been different had the district court used the clear and convincing standard. Instead, appellants simply declare in their briefs the unsubstantiated conclusion that, "[h]ad the higher standard of proof been applied at sentencing, it is reasonably probabl[e] that the result would have been different," while providing no analysis whatever of the evidence before the sentencing judge to demonstrate why the standard of proof would have mattered. *Fry* is therefore dispositive. We affirm the district court's denial of appellants § 2255 motion with respect to appellants' ineffective assistance of appellate counsel claims.

*670 II

Appellant Scott also argues the district court erred when it summarily dismissed his § 2255 motion as it pertains to the allegation that his counsel slept during the trial without first holding an evidentiary hearing. The district court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *Frazer v. United States,* 18 F.3d 778, 781 (9th Cir.1994).

The language of § 2255 creates a presumption that the district court will conduct an evidentiary hearing before deciding the merits of the motion, the court need not grant a hearing if the record conclusively shows that no relief is warranted:

> *Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,* the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255 (emphasis added). *See also* Rule 8, Rules Governing Section 2255 Proceedings for the United States District Courts (2003) ("If the motion has not been dismissed at a previous stage in the proceeding, the judge, after the answer is filed and any transcripts or records of prior court actions in the matter are in his possession, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates."). When the judge

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

deciding the § 2255 motion is the same judge who presided over the trial, he may supplement the record with his own recollections of and notes from the proceedings. *Blackledge v. Allison*, 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *see also* Rule 4(a), Rules Governing Section 2255 Proceedings for the United Stated District Courts (2003) ("The original [§ 2255] motion shall be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him....").

In this case, the district court judge deciding the § 2255 motion was the same judge who presided over Scott's trial. When deciding the § 2255 motion, the district court looked at the record, supplemented the record with his own recollections of the trial, and held that Scott was not entitled to any relief.

Petitioner points to no evidence indicating that the sleeping caused his attorney to fail to take any action during the trial he would otherwise have taken. In other words, Scott has made no showing of prejudice.

Despite Scott's failure to demonstrate specific prejudice, he can prevail by showing that his attorney slept during substantial portions of the trial, a circumstance that is prejudicial *per se*. *Javor v. United States*, 724 F.2d 831, 833-34 (9th Cir.1984). Counsel for one of Scott's codefendants stated in a declaration that Scott's attorney slept during portions of the trial, but did not say whether those portions were substantial. The trial judge relied on his own observations for the conclusion that Scott's attorney did not sleep for a substantial portion of the trial, stating that he did not observe Scott sleeping although he looked at him frequently. The affidavit of Scott's own trial attorney suggests, however, that if trial counsel had slept through substantial portions of the trial, the district court judge may not have noticed. In his affidavit, Scott's trial counsel emphatically denied that he slept during the trial but stated that he "does have a habit of removing his glasses, wiping his eyes and keeping *671 his eyes closed for a lengthy time"--a practice that, if noticed by the judge, would surely appear to be sleeping. The fact that the judge did not notice this behavior, which according to Scott's attorney could have occurred over a "lengthy time," suggests that Scott's counsel could have slept for substantial portions of the trial without the judge having noticed.

[2] This case is not, therefore, one in which "the judge's recollection of the events at issue ... enable him summarily to dismiss a § 2255 motion...." *Blackledge v. Allison*, 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Because the record does not "conclusively show that the prisoner is entitled to no relief," the district court abused its discretion by not conducting a hearing sufficient to flush out the pertinent facts.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

LEAVY, Circuit Judge, concurring in part and dissenting in part.

Moore and his co-defendants Hanley and Scott were the principal owners and officers of a telemarketing company. All three, along with a fourth co-defendant Fry, were indicted for carrying out a fraudulent telemarketing scheme. Each defendant was represented by separate counsel. After a five-week trial, a jury returned guilty verdicts against all defendants on all counts. Hanley, Moore, and Scott were sentenced to 120 months. Fry was sentenced to 46 months. All appealed their convictions and sentences, which were affirmed by this court. *United States v. Hanley*, 190 F.3d 1017, 1034 (9th Cir.1999).

I concur in the holding that the district court did not err in denying Scott's § 2255 motion regarding the ineffective assistance of counsel claims pertaining to sentencing. I dissent from the holding that the district court abused its discretion in denying an evidentiary hearing on Scott's claim that his attorney, Mr. Wommer, slept through portions of the trial and thereby denied Scott effective assistance of counsel as guaranteed by the Sixth Amendment.

Scott filed two affidavits in support of his request for a hearing. The affidavits are from the trial attorneys for each co-defendant Moore and Hanley. If each and every word of these affidavits is true, Scott would not be entitled to relief under *Javor v. United States*, 724 F.2d 831, 833-34 (9th Cir.1984). Mr. Sgro (Hanley's attorney) states: "That Affiant had witnessed Mr. Wommer sleeping during portions of the trial." Ms. Fatowe (Moore's attorney) makes *no* mention in her affidavit of Mr. Wommer's sleeping during *any* portion of the trial. In their two affidavits, Mr. Sgro and Ms. Fatowe make several general statements regarding Mr. Wommer's apparent lack of interest, lack of trial preparation, and short cross-examinations. Mr. Sgro and Ms. Fatowe state that Mr. Wommer sat at their counsel table with a single sheet of paper, while they managed numerous boxes of exhibits. Neither attorney informs us how Scott

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

was hurt by his counsel's performance. Moreover, neither attorney tells us that their *own* clients were hurt by Mr. Wommer's allegedly deficient performance.

Effectiveness of counsel is not measured by how many files counsel carries or the length of cross-examination. Scott, who was the company's treasurer in charge of financial matters, ended up being found guilty of the same conspiracy as that involving both Mr. Sgro's client and Ms. Fatowe's client. Scott received exactly the same sentence as that imposed upon his two co-defendant officers. If Mr. Wommer failed to live up to his obligations to Mr. Sgro and Ms. Fatowe as a member of the defense counsel "team," Mr. Sgro and ***672** Ms. Fatowe should have made that claim on behalf of their own clients.

Absent any showing of prejudice, Scott is entitled to relief *only* if he can demonstrate that his attorney slept through a "substantial" portion of his trial. *Javor,* 724 F.2d at 833-34; *see also United States v. Petersen,* 777 F.2d 482, 484 (9th Cir.1985). The strongest and best evidence that Scott proffers is *one* passive statement by Mr. Sgro that he "had witnessed Mr. Wommer sleeping during portions of the trial." There is no assertion anywhere in the record that Mr. Wommer slept during a *substantial* or *significant* portion of the trial. Mr. Sgro does not identify any portion or segment of the trial during which the alleged sleeping occurred, nor does he suggest that any event (such as witness testimony, an objection, or a motion) occurred during the time he "had witnessed" Mr. Wommer sleeping. If Scott is entitled to an evidentiary hearing on a lone assertion as weak as this one, then any defendant would be entitled to an evidentiary hearing regarding the sleeping of his counsel upon an equally weak assertion from an attorney, a co-defendant, or perhaps the defendant himself.

In deciding a § 2255 motion, the district court is required to give a claim "careful consideration and plenary processing, including full opportunity for presentation of relevant facts." *Shah v. United States,* 878 F.2d 1156, 1159 (9th Cir.1989) (citations omitted); 28 U.S.C. § 2255. A district court has the discretion to deny an evidentiary hearing and rely on the record, which may be supplemented by the judge's own notes and recollection of the trial, and also common sense. *Id.*

Here, the district judge presided over the five-week trial and the sentencing of the defendants. The trial judge concluded, based upon his own recollections that: "the alleged sleeping episodes could not have occurred during a substantial portion of the trial." In addition to the trial transcript showing substantial participation by Mr. Wommer and the district judge's recollections, the court considered the affidavits from Mr. Wommer denying that he slept during the trial, and the two affidavits from Mr. Sgro and Ms. Fatowe. The district court had sufficient information to exercise its discretion soundly in deciding to deny an evidentiary hearing. *Shah,* 878 F.2d at 1159-60.

I respectfully dissent from the majority's decision to remand for an evidentiary hearing on Scott's claim of ineffective assistance of counsel.

(FN*) With respect to the appeals of Hanley and Moore, this panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

(FN**) This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

© 2004 West, a Thomson business. No claim to original U.S. Govt. works.

# AFFIDAVIT

I, IKE WEEMS, declare under penalty of perjury that the statements I make in this Affidavit are true and correct.

ME and Attorney Jeffrey Richardson had several meetings prior to my first trial. During a couple of these meetings, Mr. Richardson told me that the only evidence the Government was going to produce was the same evidence they introduced at the Suppresion Hearing minus the testimony of anybody seeing me with firearm prior to Agents entering House. Basically, Mr. Richardson told me the Government was going to offer testimony that they got a call from an informant that I was at 11 Padelford street, the Agents then came inside House and eventually arrested me on bed where firearm was found on Boxspring. I told Him I have been studying case law on actual and constructive possession and with out testimony from the informant, or anybody saying they were told I had firearm prior to entry of House, the evidence would be legally insufficient to go to a Jury. I provided several first circuit cases to Attorney Richardson which support legal argument of insufficient evidence. (Including but not limitted to the cases within this memorandum of law) I asked him to have a written brief ready at the close of Governments case and to request Judgement of Acquittal. Attorney Richardson neither prepared requested brief neither did he move for Judgement of ~~for~~ Acquittal immediately after Government rested. I had to remind him to move for Judgement of Acquittal the next day before we put on defense witness Sandra Hurt.

Signed [signature]

Date: 2-13-05

"EXHIBIT E"

**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

(401) 528-5477
FAX (401) 528-5474

August 24, 2001

Jeffrey F. Richardson, Esq.
571 Pontiac Avenue
Cranston, Rhode Island 02910

Re: United States v. Weems

Dear Mr. Richardson:

As we discussed in our telephone conversation today, in addition to the witnesses called by the government during its case-in-chief , the government will also likely call Lieutenant Fitzgerald of the Providence Police department and Christopher Macon. To my knowledge, Lieutenant Fitzgerald has not written any reports concerning the arrest of Mr. Weems or the discovery of the firearm at Padelford Street.

Mr. Macon was the confidential informant who tipped SA Troiano as to your client's presence in the apartment with the firearm on the day of his arrest. I expect Mr. Macon will also testify that he had seen your client with the firearm on several other occasions including about a month before the arrest when Mr. Weems was standing in the yard at Padelford Street; about a week later when Mr. Weems was walking down Padelford Street and about three to four days before when Mr. Weems fled as officers tried to arrest him and Mr. Yates.

Mr. Macon will also testify that he has purchased marijuana from Mr. Weems on several occasions at the Padelford Street apartment. During those times he has seen Mr. Weems with the firearm. Mr. Macon will also say it is his understanding the Mr. Weems also sold crack cocaine from that address. Mr. Macon will also state that he saw two other firearms in the apartment on the day of your client's arrest along with some other individuals. This material should be considered to be additional Rule 404(b) material.

"Exhibit F"

Mr. Macon used marijuana on a regular basis, sharing 6 to 7 blunts a day with whomever was in the area during this time period. I have attached a copy of Mr. Macon's criminal history. Prior to being signed up as an informant for ATF, Christopher Macon was accompanied by Providence Police officer Kerion O'Mara to the District Court regarding a court appearance for domestic assault in 2000. Detective O'Mara notified the state prosecutor of the fact that Macon was cooperating with law enforcement. The prosecutor agreed to continue Macon's case. No requests were made by law enforcement to dismiss the case against Macon. It is my understanding that the domestic violence complaint was dropped after Mr. Macon's wife/girl friend dropped the charges. I have also attached a copy of Mr. Macon's informant agreement with ATF. To date Mr. Macon has been paid approximately $2,000 for his work on a number of cases including this case.

Sincerely,

MARGARET E. CURRAN
United States Attorney

STEPHANIE S. BROWNE
Assistant U.S. Attorney

SSB
Enclosures

"Exhibit F"

Case No.: 1-00-160423 PROVIDENCE POLICE DEPARTMENT (Continued)

On 11/06/00 at approximately 1945 hours while on routine patrol on Padelford Street police observed a red Lexus with RI registration CD-293 drive onto the driveway at 10 Padelford St. Police then observed two black male subject exit the vehicle and run into the rear of 90-92 Pleasant St. Police were not able to locate the two subjects at this time. A check with channel four verified that the vehicle was actively registered to a Carol DeBritto of 105 Abbott St. Providence. Police at this time took a fixed position on McCann Place where police had a clear view of the suspects vehicle. At 2058 hours police observed a black male subject and female walk out from the rear of 90 Pleasant and onto Padelford where they go into the above vehicle. Police at this time stopped the vehicle in front of 94 Pleasant Street where the driver was identified as Eunique Wilson DOB 02/08/77 of 2 Carver CT. Providence. The passenger was positively identified by Ptlm. Pereira as the subject that was observed exiting from the drivers side after it was parked at 10 Padelford Street. This subject identified himself to Police as John Smith. Police observed that the Smith subject was nervous and that his hands were trembling. Police at this time asked the subject his name again, where he then stated Tony Smith. Police at this time observed the subject to be moving his hands in furtive motion. Police at this time instructed the Smith subject to step out of the vehicle where police conducted a pat down for officer safety. Police at this time placed the Smith subject into the rear of the police vehicle. Police then observed a drivers license on the floor of the passengers side with the Smith subjects picture. The name on the RI License was a Russell Yates DOB 07/06/71 of 20 Peach Avenue, Providence. A check with channel four verified that the Yates subject had the following warrants.

1. Warrant for Weapon Offense from the AG's Office DOW 05/24/00
2. Violation of Conditions of Parole DOW 07/17/00
3. FTA Charge of Larceny Under 500 Warwick PD DOW 10/19/00

Channel four also confirmed that the Yates subject had a Suspended License, RI 9991607. Police at this time issued ZZ summons 210271 for Suspended License and transported the subject to Central Station where he was TOT Detectives for further investigation. All of the above warrants were confirmed active at this time. Police also had the above listed vehicle towed for safe keeping by Branch Towing. Car 625 Sgt. Campbell was notified.

*************************** N A R R A T I V E # 3 ****************************

DETECTIVES SUPPLEMENT    Reported By: WESTON, CARL, JR. W.    11/06/00
Entered By.: WESTON, CARL, JR. W.    11/06/00

RUSSELL YATES, 7/6/71, BOOKED AND CHARGED WITH 3 WARRANTS.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

"Exhibit G"

5. Approximately 4 weeks ago CI-2 called me and stated that Yates was currently on Padelford Street, driving a maroon Lexus. I referred this information to Officer George Pereira of the Providence Police Department who told me that he had just arrested Yates, but that two other individuals had fled on foot. I spoke with CI-2 later on that night and he/she informed me that Weems was one of the individuals who had fled. CI-2 stated that Weems carried a handgun, which he/she had personally seen. CI-2 described it as unlike anything he/she had ever seen, a revolver that fired shotgun shells.

6. On December 11, 2000, CI-2 again contacted me. The informant told me that Weems was currently inside the residence of 11 Padelford Street in Providence and was armed. I contacted Providence Police and advised them of these circumstances. I was able to confirm that Weems still had an outstanding warrant for his arrest issued by the State of Rhode Island. In addition I conducted a criminal background check on Weems and determined that Weems appeared to have been convicted of several different felonies in the State of Rhode Island.

7. Agents and officers went to 11 Padelford Street and approached the front door of the residence. As they approached, a female identifying herself as Katisha Smith, approached the officers and agents and stated that she lived in the apartment. Officers informed her that they were looking for Weems and had reason to believe he was inside. Smith stated that she lived by herself and that there was no one inside the apartment.



"EXHibit H"

8. As this was occurring, officers had knocked on the front door of the residence and announced their presence, at which time Weems was observed sticking his head from a window in the rear of the residence. Weems was ordered not to move, but quickly withdrew his head back inside. Smith provided officers the key to the front door of the residence. Officers went inside, repeatedly announcing their presence and commanding Weems to come out. Officers conducted a security sweep of the entire apartment and did not locate Weems or observe any weapons. During the sweep officers had noticed an open hatchway leading to an attic above the residence. Subsequent to the sweep, officers heard footsteps on the ceiling above them. Officers gave instructions for approximately 15 minutes for Weems to come down out of the attic but received no response. Officers then began spraying "pepper spray" into the attic area, after which Weems broke through the ceiling above the officers and began to come down. Officers eventually grabbed Weems's legs and pulled him down into a bedroom. Weems fell onto a bed and continually struggled with officers while they attempted to secure him. He was eventually handcuffed and taken out of the apartment.

9. After Weems was secured and arrested, officers observed an MIL, model Thunder Five, .45 caliber/410 gauge revolver on the bed in the immediate area where he had been lying. The revolver was loaded with .410 gauge shotgun shells. There were also two men's coats, one gray and one black. Smith identified both jackets as belonging to Weems. The gray jacket contained a key



"Exhibit H"

in one of the pockets, which fit the front door of the apartment.

10. Ms. Smith claimed that she lived in the apartment alone with her infant. She further stated that she did not own any firearms or allow any to be stored in her apartment.

11. I have learned that Weems has prior convictions for drug trafficking and firearms violations.

12. WHEREFORE, I respectfully submit that there is probable cause to believe that the above-named defendant has violated 18 U.S.C. § 922(g)(1) (Felon in Possession of Firearms and Ammunition).

Edward Troiano
Special Agent
Bureau of Alcohol, Tobacco & Firearms

Subscribed and sworn to before me this 12th day of December, 2000, at Providence, Rhode Island.

Robert W. Lovegreen
United States Magistrate Judge
United States District Court

"Exhibit H"

# AFFIDAVIT

I, Ike Weems, declare under penalty of perjury that the statements I make in this Affidavit are true and correct.

During various conversations with Attorney Jeffrey Richardson, prior to my first Trial, I told him that Agent Troiano was being untruthful in his Affidavit and testimony about Informant (who I found later to be Christopher Macon) telling him that he saw me with the firearm I was being charged with on the day I was arrested and a month before. I ~~continuosly~~ ~~continuosly~~ continuosly requested for him to file a motion for Franks Hearing and also showed him U.S. v. Valerio, 48 F3d. 58 (1st cir 1995) I also submitted a letter and Affidavit to Judge Torres prior to my Second Trial stating that Agent Troiano was being untruthful about what Macon told him. I also told Mr. Richardson that Agent Troiano was giving false recitations of what Macon told him so he could establish a nexus between me and the firearm that the Agents found during a search. I told him Macon mostlikely did call Troiano and tell him he saw me at house, but it was emphatically impossible for Macon to tell him he saw me with firearm I was charged with. Prior to my Second Trial Mr. Richardson showed me a letter from the Government stating what Macon is expected to testify to, This letter showed a difference in what Macon stated he saw to what Agent Troiano said he told him, I again asked Mr. Richardson to file motion for Franks hearing, I informed him that this letter and my Affidavit should be enough to make a substantial showing for a Franks Hearing under the Valerio case where Judge Torres allowed a Franks Hearing on similar conditions. Attorney Richardson did nothing to bring this to the courts attention.

Signed [signature]

Date: 2-13-05

"EXHIBIT H"

DEFENDANT'S PROPOSED JURY INSTRUCTION NO.1

THE THEORY OF THE DEFENSE EXPLAINED

Defendant Weems has pleaded "not guilty" to the charge contained in the indictment. This plea of not guilty puts in issue the essential second element of the offense, which is knowingly possessed the firearm as described in these instructions and continues to impose on the government the burden of establishing each of this element by proof beyond a reasonable doubt.

Defendant Weems, moreover, contends that he is not guilty of the crime charged because he did not "knowingly" and "intentionally" possess firearm on or about December 11, 2000.

It is Defendant's theory that the firearm was not found at the time and location within the house as government witnesses have testified but instead the firearm was discovered at a later time and placed on the box spring by agents or officers in the area where the defendant was arrested. To support this theory, the Defendant has called witness Sandra Hurt to rebut the government's version of where and when they found the firearm.

The defendant has no obligation whatsoever to prove to you that his theory is correct, but rather the burden is always on the government to prove all of the material elements of each offense charged beyond a reasonable doubt, including the element of knowledge and intent with respect to the offense, as I have already explained.

U.S. v. JOSLEYN, 99 F3d 1182, 1185 (1st Cir. 1996)

"Exhibit I"