IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF RHODE ISLAND

IKE WEEMS,
Petitioner

V. CASE NO. 04 - 421T

UNITED STATES OF AMERICA,
Respondent

Motion For Expansion of Record Pursuant To Rule 7 of the Rules Governing §2255 Proceedings

Please take notice, that the above - named Petitioner, IKE WEEMS, appearing pro se, respectfully moves this Honorable Court pursuant to the Title U.S.C. §2255, rule 7(b), for expansion of the record.

The material item petitioner request to be added is the attached brief which supports Petitioner's claim in ground 12 of Petitioner's Memorandum of Law Rebutting United States' Objection To Defendant's Motion To Vacate, Set Aside and/or Correct Sentence Pursuant to 28 U.S.C. §2255. Petitioner also respectfully asks this Honorable Court to extend his argument in Ground 12 to the recent Supreme Court in Shepard v United States, 125 S.Ct 1254 (2005).

CONCLUSION

Wherefore, Petitioner respectfully submits this motion pursuit to rule 7, and hopes and prays that this Honorable Court grants this Motion for Expansion of the Record for the reasons stated herein, and for such other relief that the Court deems just and proper.

Respectfully Submitted,

Date: 9-25-05

IKE WEEMS, Pro-Se
USP Big Sandy
P.O. Box 2068
Inez, KY 41224

A. Well Established Constitutionally Based Principles and Court Precedent Compelled the Supreme Court's Determination in Blakely and Booker that the Mandatory Application of a Judicially Determined Sentencing Guideline Range was Unconstitutional

Because the holdings of Blakely and Booker were merely applications of governing principles in new and different factual situations, Supreme Court precedent mandates that the rules of Blakely and Booker be applied retroactively to Weems' case. The decisions in Blakely and Booker were inevitable because they based on centuries old constitutional principles. "[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required," Winship, 397 US at 362 (1970). "This notion--basic in our law and rightly one of the boasts of a free society--is a requirement and a safeguard of due process of law in the historic, procedural content of 'due process.'" Id.

In Fact, the Apprendi and Booker Courts confirm that their holdings were compelled by well established constitutional principles. "The Founders presumable carried this concern from England, in which the right to a jury trial had been enshrined since the Magna Carta." Booker, at 753 (2005). In fact, "the historical foundation for our recognition of these principles extends down centuries into the common law. 'To guard against a spirit of oppression and tyranny on the part of rulers,' and 'as the great bulwark of our civil and political liberties,' trial by jury has been understood to require that 'the truth of every accusation, whether preffered in the shape of indictment, information, or appeal, should afterwards be confirmed

by the unanimous suffrage of twelve of the [the defendant's] equals and neighbors.'" Booker at 753, citing Apprendi, 530 U.S., at 477 (2000). "Those principles are unquestionably applicably to the Guidelines. They are not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals our constitutional tradition assimilated from the common law." Booker, at 753.

B. Because Established Constitutionally Based Principles and Prior Court Precedent Compelled the Supreme Court's Determination in Blakely and Booker, Those Decisions Apply Retroactively to the Weems' Case

In American jurisprudence, questions of "retroactivity" arise in the face of new rules that dramatically change the legal land-scape, that alter bedrock understandings of substance or procedure. But when the Supreme Court simply applies settled precedent to new factual patterns to further clarify how the settled precedent applies in a new area, that is not a new rule at all, and no question exists that the tenet of the new case applies to older cases. United States v Johnson, 457 U.S. 537, 549 (1982);

> [W]hen a decision of this Court merely has applied settled precedents to new and different factual situations, no real question has arisen as to whether the later decision should apply retro-spectively. In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases, because the later decision has not in fact altered that rule in any material way.

Id., citing Truesdale v Aiken, 480 US 527 (1987) (per curiam); Dunaway v New York, 442 U.S. 200 (1979); Lee v Missouri, 439 US 461, 462 (1979) (per curiam).

In United States v Davis, 417 U.S. 333 (1974), the Court held that in resolving the question whether a petitioner mounting a collateral attack on his conviction should be given the benefit of case law decided after his conviction, the Court would consider "whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice," and whether "[i]t presents exceptional circumstances where the need for the remedy afforded "by collateral relief is apparent." Id, at 346. When a decision in an intervening case involves substantive changes in law, the Supreme Court has "recogniz[ed] full retro-activity as a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a defendant in the first place." United States v Johnson, 457 U.S. 537, 550, 101 S.Ct. 2579, 73 L. Ed. 2d 202 (1982).

The Ninth Circuit has similarly ruled that "[a]s a result of Davis, the doors of collateral review are open for petitioners who can show, through an intervening change in the law, that they could not have committed the substantive offense with which they were charged. Chambers v United States, 22 F. 3d. 939, 943 (CA 9 1994) (citation omitted); see also, United States v Callanan, 881 F. 2d. 229, 231 (CA 1989) (retroactive application of new law necessary where intervening change in the law results in the defendant being punished for conduct that is no longer considered criminal).

The Supreme Court demonstrated the retroactivity of new applications of settled principle to older cases in Yates v Aiken, 484 U.S. 211, 108 S.Ct. 534 (1988). In Yates, the "settled precedent" was based on the Supreme Court's decision in Sandstrom v Montana, 442 U.S. 510 (1979). In Sandstrom, the Court had established that the Due Process Clause of the Fourteenth Amendment prohibits jury instructions that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. Sandstrom, 442 U.S. at 520-24, citing, inter alia, In re Winship, 397 US 358, 364 (1970). See Yates, 484 at 214.

Yates was tried in a South Carolina trial court after the Sandstrom decision. Yates, 484 U.S. at 212. The trial judge instructed the jury that it did not have to determine intent beyond a reasonable doubt. Id. Yates' conviction was affirmed, and his conviction became final. Id. Yates timely filed an application for writ of habeas corpus in the state court, arguing that it was error to give the instruction. Id. While the habeas application was pending in the state supreme court, the U.S. Supreme Court applied the Sandstrom principle to a new set of facts, deciding Francis v Franklin, 471 U.S. 307 (1985). Yates, 484 U.S. at 213. Yates brought the Francis decision to the attention of the state supreme court, but that high state court denied the writ. Id.

The state supreme court found that, while the jury instruction in Yates' case had been unconstitutional, he did not deserve relief because the decisions that declared the instruction improper were decided after Yates' conviction had become final. Yates v Aiken, 290 S.C. 231, 233, 349 S.E. 2d 84, 85 (1986). One state justice

dissented in part because the Sandstrom decision had established the basic principle, and that while Francis had applied that principle to new facts, Francis was not a "clear break with prior law." 290 S.C. at 239, 349 S.E. 2d at 88. Because the holding of Francis had its beginnings in Sandstrom, and because Sandstrom had been decided before Mr. Yates' trial, the holding of Francis applied to Mr. Yates case. Interestingly, the justice noted that the law assigns the "truth-finding function" in a criminal case "solely to the jury." 290 S.C. at 239, 349 S.E. 2d at 88.

Following that defeat, Yates sought a writ of certiorari in the U.S. Supreme Court. Yates, 484 U.S. at 213. The question before the Court was whether, as a matter of Federal law, the "rule" of Francis - decided well after Mr. Yates' conviction became final - would apply to Mr. Yates' case. See id at 214. The Court's answer was yes.

The Yates Court noted "that many 'new' holdings are merely applications of principles that were well settled at the time of conviction." Id, at 216. Citing Justice Harlan, the Yates Court concluded that a new decision, which was an application of a settled principle to new facts, applies to a defendant's case on habeas review if the settled principle has decided before the defendant's conviction became final. Id, 216-17, citing Desist v United States, 394 U.S. 244, 263-64 (1969). "This reasoning *** is controlling in this case because our decision in Francis was merely an application of the principle that governed our decision in Sandstrom v Montana, which has been decided before [Yates']

trial took place." Yates, 484 U.S. at 216-17. To the Yates Court, "Francis did not announce a new rule," id. at 217, even though it extended Sandstrom to new fact pattern and with a new result. For these reasons, the Francis decision applied retroactively to Yates' case, and the Yates Court reversed the state supreme court decision and remanded the matter. Id at 218.

The decisions in United States v Johnson, 457 US 537 (1982), Dunaway v New York, 442 U.S. 200 (1979); Lee v Missouri, 439 U.S. 461, 462 (1979) (per curiam), Truesdale v Aiken, 480 U.S. 527 (1987) (per curiam) and Yates v Aiken, 484 U.S. 211, 108 S.Ct 534 (1988), expressly made clear that when a decision of the Court merely applies "settled precedents to new and different factual situations, no real question arises as to whether the later decision should apply retrospectively," Johnson, 457 U.S. at 549. When the settled precedent was decided before the defendant's conviction became final, Yates, 484 U.S. at 216-17, "it has been a foregone conclusion that the rule of the later case applies in earlier cases," because the later decisions were reaffirming the settled principle and not establishing new rules. Johnson, 457 U.S. at 549.

In the instant case, similar to the defendant in Yates, Supra, Weems asserts that he too should benefit from a new application of well settled precedent to the Sentencing Reform Act and 18 U.S.C. §3553 in Blakely and Booker, supra. Weems submits that the decisions in Blakely and Booker are new decisions which were applications of a settled principle to new facts, i.e., the Sentence Reform Act and 18 U.S.C. §3553. These decisions were compelled by well settled principles and previous Supreme Court precendent.

"The Founders presumably carried this concern from England, in which the right to a jury trial has been enshrined since the Magna Carta *** trial by jury has been understood to require that the truth of every accusation, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbors.*** Those principles are unquestionably applicable to the Guidelines. They are not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals our constitutional tradition assimilated from the common law."

Booker, at 753; see also Jones v United States, 526 U.S. 227 (1999); Apprendi v New Jersey, 530 U.S. 466 (2000); and Ring v Arizona, 536 U.S. 584 (2002).

Weems submits that the Supreme Court's recent clarification of permissible sentencing under §3553(a) and the Sixth Amendment in Blakely and Booker represent the circumstances discussed by the Yates and Davis Courts and justify collateral relief. To allow Weems' sentence to stand would amount to punishment for "... conduct which the law does not criminalize." Davis v United States, 417 U.S. 333, 346 (1974). Booker declared the guidelines to be unconstitutional, no longer mandatory, only advisory.

C. Weems Should be Resentenced Since the Use of His Alleged Prior Convictions Without Any of the Charging Documents Proving Them Is a Direct Violation of the Supreme Court's Holding in Shepard and Taylor

Booker, like Apprendi and Blakely, expressly creates an exception from its Sixth Amendment holding for facts of prior conviction, stating, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S.Ct. at 756 (emphasis added). But this

exception is not consistent with the broad reasoning of these three cases, which would seem to require that any fact increasing the sentence range must be either admitted or proven to the jury. See Apprendi, 530 U.S. at 499-523 (Thomas, J., concurring).

In Shepard v United States, 125 S.Ct 1254 (2005), decided after Booker, the Court strongly suggested that the prior conviction exception should be viewed narrowly and that Almendarèz - Torres v United States, 523 U.S. 224 (1998), on which this exception is based, may soon be overturned. Particularly in view of Shepard, defense counsel must be sure to object to any statutory sentencing enhancements based on prior convictions that were not admitted or proven to the jury. This will be expounded upon further in this brief.

Since the holding of Shepard is nothing more than the Supreme Court applying the settled precedent of Taylor v United States, 495 U.S. 575 (1990) to new factual patterns to further clarify how the settled precedent applies in a new area, then the same argument posited in subsection B of this brief, applies to the Shepard opinion, now presented. Shepard was charged with gun possession, as was the Petitioner. Under the Armed Career Criminal Act ("ACCA" 18 U.S.C. §924(e)), a defendant charged with gun possession under 18 U.S.C. §922(g) faces a dramatic sentencing enhancement - from a maximum of 10 years to a minimum of 15 years and a maximum of life - if he or she has three prior convictions for serious drug offenses or violent felonies, including burglary. Shepard held that a prior conviction for non-generic burglary based on a guilty plea

can count as a qualifying violent felony if the charging document, plea agreement, or plea colloquy make clear that the offense conduct actually constituted generic burglary. "Generic burglary" as the term is used in Shepard, is the "unlawful of unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," while "non-generic burglary" refers to burglary when it is more broadly defined to include, for example, entries into boats and cars. 125 S.Ct. at 1257.

In so holding, Shepard simply extended the "categorical approach" of Taylor v United Stated, 495 U.S. 575 (1990), to quilty pleas. Taylor held that a prior conviction for burglary must be for generic burglary (which does not include entry into boats or cars). Under the "categorical approach," the court cannot delve into the underlying facts of the conviction, but instead must look only to the statutory elements. The Court created a "narrow exception," however, for cases in which the statutory definition is broader than generic burglary, but the indictment or information and jury instructions show that the defendant was only charged with generic burglary, and the jury necessarily had to find the elements of generic burglary in order to convict.

Shepard, in applying Taylor's categorical approach to cases tried without a jury, ruled that the closest analog to jury instructions "would be a bench - trial judge's formal rulings of law and findings of fact, and in pleaded cases they would be the statement of factual basis for the charge, Fed R. Crim. P. 11(a)(3), shown by a transcript of plea colloquy or by written plea agreement presented to the court,or by a record of comparable findings of

fact adopted by the defendant upon entering the plea." Shepard, 125 S.Ct at 1259-60. The Court emphatically rejected the government's request to broaden the categorical approach to include documents such as police reports submitted in support of complaints. Id. at 1260.

In the instant case, Petitioner Weems' sentence was imposed in violation of Shepard because the district court found him to be an armed career criminal within the meaning of United States Sentencing Guideline 4B1.4 without sufficient proof that his prior offenses constituted violent felonies within the meaning of Armed Career Criminal Act, 18 U.S.C. §924(e). The district court never reviewed any of the proper paperwork from Rhode Island Court of General Sessions, in order to determine whether Weems, in fact, had these qualifying offenses for "ACCA," or if they even existed, for that matter.

The Armed Career Criminal Act, which mandates a minimum fifteen year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies, "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle." Shepard, 125 S.Ct. at 1257. The Court had previously held, in Taylor v United States, 495 US 575 (1990), that a court sentencing under the Act "could look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary. "Shepard, 125 S.CT. at 1257 (discussing Taylor)(emphasis added). The question presented in Shepard was "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for generic

buglary." Id. (emphasis added). The Court concluded "that it may not, and that a later court determining the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id.; see also id. at 1263 ("We hold that enquiry under the Act to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis, or to some comparable judicial record of this information."). Although both Shepard and Taylor involved prior burglaries, the Court's holding in those cases "cover[] other predicate offense" under the Act as well. Id. at 1257 n.2.

In the instant case, the only documentation in the record of the district court concerning these prior convictions is found in the presentence report prepared by the probation officer. The district court never explicitly indicated, however that it was relying upon the report in determining whether Weems was an armed career criminal. In any event, even if a presentence report could generally satisfy the requirements of Shepard and Taylor, which is doubtful, the presentence report in this case clearly does not; it fails to include even the most basic information about Weems' prior convictions -- such as: (1) For each of the three offenses, what statute Weems was convicted of violating; and (2) whether the

respective prior convictions were resolved by trial or by plea agreement (which makes it impossible to determine whether this issue is more appropriately governed by Taylor or Shepard.) More importantly the information provided in the presentence report was obtained mostly from police reports, which is forbidden by Shepard and Taylor.

Therefore, the district court should, on remand, in addition to treating the Guidelines as advisory pursuant to Booker (See United States v Barnett, 398 F. 3d 516 (CA 6 2005)), it should either explain the basis for its prior conclusion that Weems had previously been convicted of three violent felonies within the meaning of the Armed Career Criminal Act (so that, if necessary, the Court of Appeals may determine on a certificate of appealability whether the requirements of Shepard and Taylor were satisfied) or re-sentence Weems anew in accordance with Shepard, Taylor, this motion and all other pleadings on file, and any other applicable precedent.

D. Weems Would Like To Reserve the Right to Preserve The Right To Argue an Almandarez - Torres Issue In The Event That It Is Revisited By The Supreme Court

Although the defendant in Shepard did not challenge Almandarez - Torres or the prior conviction exception, parts of Shepard make clear that Five Justices would support overturning that decision and eliminating the exception. And until that happens, Shepard also makes clear that Amandarez - Torres should be read very narrowly to apply only to facts established by the record of conviction.

In Section III of the opinion, which only commanded a four-justice plurality, Justice Souter explains that the Court's holding limiting the scope of judicial fact-finding regarding prior convictions is required also by the "rule of reading statutes to avoid serious risks of unconstitutionality." 125 S.Ct. at 1263. As Souter explained, judicial fact-finding about a disputed prior conviction, "raises the concern underlying Jones [ v United States, 526 U.S. 227, 243 n.6 (1999)] and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." Id at 1262. Souter then notes that the dissent charges the Court's decision "may portend the extension of Apprendi ... to proof of prior convictions." Id at 1263 n.5. Souter does nothing to dispel this impression, but instead observes that any risk that a defendant might be prejudiced by proof of prior convictions to the jury could easily be addressed by the defendant waiving the right to have the jury decide that issue.

The fair implication of this plurality opinion is that any judge fact-finding that strays beyond the "fact of our prior conviction," whether that be facts regarding probationary statue, release date from custody, or nature of offense, risks constitutional infirmity. Thus, the Almandarez - Torres exception for facts of prior conviction should be construed very narrowly so as to minimize this risk. The Fourth Circuit adopted this view in United States v Washington ___F.3d ___, 2005 WL 858010 *6-8* (4th Cir April 15, 2005), holding, in the context of the enhancement for a prior conviction of a "crime of violence," that in light of Shepard, the "prior conviction exception"

is a limited one that does not permit judicial fact-finding regarding facts not contained in the indictment or the other documents Shepard permits.

Justice Thomas concurred in the other parts of the opinion but did not join in Part III only because it did not go far enough. Thomas states that "a majority of the Court now recognizes that Almandarez - Torres was wrongly decided," and he would find the ACCA unconstitutional as applied to Shepard because it requires an increase in the sentence based on facts (the prior convictions) not admitted by the defendant or proven to a jury. Shepard, 125 S.Ct. at 1264 (Thomas, J. Concurring.). Thomas also said: "The parties do not request it here, but in an appropriate case, the Court should consider Almandarez - Torres' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almandarez - Torres, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond - a - reasonable doubt requirements." Id, 125 S.Ct at 1264, (internal quotations and citations omitted.)

In the event that the appropriate case arises, in order for the holding of the prior conviction exception of Almandarez - Torres, to be revisited and reevaluated, Weems would like to be able to submit arguments concerning the violations in his case that will be considered meritorious because of the reevaluated holding of Almandarez - Torres. Weems is preserving the right to present that argument, once the appropriate case arises.

Respectfully Submitted,

I. Weems

Date: 9-25-05

IKE WEEMS, Pro-Se
USP Big Sandy
P.O. Box 2068
Inez, KY 41224

Certificate of Service

I hereby certify that on the 25th of Sept., 2005, I forwarded a copy of petitioner's motion for Expansion of Record Pursuant to Rule 7 of the Rules Governing §2255 Proceedings, by postal mail, to:

Dulce Donovan
Assistant U.S. Attorney
50 Kennedy Plaza
8th Floor
Providence, R.I. 02903